NOTICE OF OBJECTION TO CONFIRMATION

CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE has filed papers with the Court to object to the Confirmation of the Chapter 13 Plan.

**<u>Your rights may be affected</u>. You should read these papers carefully and discuss
them with your attorney, if you have one in this bankruptcy case. (If you do not have an
attorney, you may wish to consult one.)**

If you do not want the Court to object to the Confirmation of the Chapter 13 Plan, or if
you want the Court to consider your views on the Objection, then on or before, you or your
attorney must:

File with the Court an answer, explaining your position at:
**Clerk
U.S. Bankruptcy Court
50 Walnut Street, 3rd Floor
Newark, NJ 07102**

If you mail your response to the Court for filing, you must mail it early enough so that the Court
will *receive* it on or before the date stated above.

You must also mail a copy to:

Phelan Hallinan Diamond & Jones, PC      MARIE-ANN GREENBERG, Trustee
1617 JFK Boulevard, Suite 1400           30 TWO BRIDGES ROAD, SUITE 330
Philadelphia, PA 19103                   FAIRFIELD, NJ 07004

Attend the hearing scheduled to be held on 10/24/2019 in the NEWARK
Bankruptcy Court, at the following address:
**U.S. Bankruptcy Court
50 Walnut Street, 3rd Floor
Newark, NJ 07102**

If you or your attorney do not make these steps, the Court may decide that you do not
oppose the relief sought in the Objection and may enter an Order granting that relief.

Date: October 3, 2019

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

**File No. 830224**
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard
Philadelphia, PA 19103
856-813-5500
FAX Number 856-813-5501
CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE

| In Re:<br><br>       ALMOATAZ B. BASUONI, JR<br><br><br>Debtors | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>Chapter 13<br><br>Case No. 19-24262 - JKS<br><br>Hearing Date: 10/24/2019 |
|---|---|

The undersigned, Phelan Hallinan Diamond & Jones, PC, attorneys for Secured Creditor,
CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS
TRUSTEE, the holder of a Mortgage on debtors residence located at 66 MADISON AVENUE,
JERSEY CITY, NJ 07304 hereby objects to the Confirmation of the debtors proposed Chapter 13
Plan on the following grounds:

      1.      On October 1, 2019, Movant filed Proof of Claim listing pre-petition arrears
in the amount of $353,260.99. A copy of the Proof of Claim is attached hereto as Exhibit
"A" and made a part hereof.

      2.      Debtors' Plan fails to cure the delinquency pursuant to 11 U.S.C.
§1322(b)(5).

3.      Debtors' Plan currently provides for payment to Movant in the amount of

$0.00. A copy of the Debtors' Plan is attached hereto as Exhibit A. Movant therefore objects

to Debtors' Plan as it is underfunded. Debtors' Plan should be further amended to fully fund

the arrears owed to Movant or Confirmation should be denied.

4.      The Debtors' Schedules indicate that the Debtor has a mortgage held by

Cenlar.  The Debtors' proposed Chapter 13 Plan lists Movant under Part 7, Section A listing

the scheduled debt as $345,000.00 and the total collateral value as $425,000.00. It is

assumed the Debtors are seeking to cramdown and avoid the lien. A copy of the Debtors'

Plan is attached hereto as Exhibit "A" and made a part hereof.

5.      Debtors' plan does not propose to cure arrears due to Movant's first

mortgage lien through the plan.  Movant objects to the proposed Chapter 13 Plan.

6.      Debtors' Plan currently fails to adequately provide for arrears owed to

Movant.

WHEREFORE, CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED

PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL

ASSOCIATION, AS TRUSTEE respectfully requests that the Confirmation of Debtors Plan be

denied.

/s/ Robert J. Davidow
Robert J. Davidow, Esq.
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
Tel: 856-813-5500 Ext. 47960
Fax: 856-813-5501
Email: Robert.Davidow@phelanhallinan.com

Dated: October 3, 2019

# Exhibit "A"

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | ALMOATAZ B. BASUONI, JR |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | NEWARK Vicinage of the    District of New Jersey (State) |
| Case Number | 19-24262 JKS |

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

The law requires that filer **must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157, and 3571.
**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| **Part 1:** | **Identify the Claim** |
|---|---|

| | | | |
|---|---|---|---|
| 1. | Who is the current creditor? | CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE | |
| | | Name of the current creditor (the person or entity to be paid for this claim) | |
| | | Other names the creditor used with the debtor | |

| | | |
|---|---|---|
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From Whom? _____ |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
| | | CENLAR FSB | CENLAR FSB |
| | | BK DEPARTMENT, 425 PHILLIPS BLVD. | BK DEPARTMENT, 425 PHILLIPS BLVD. |
| | | Number          Street | Number          Street |
| | | EWING          NJ          08618 | EWING          NJ          08618 |
| | | City          State          Zip | City          State          Zip |
| | | Contact Phone _____ | Contact Phone _____ |
| | | Contact Email _____ | Contact Email _____ |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one) | |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____        Filed on _____ |

| | | |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? _____ |

## Part 2:  Give Information about the Claim as of the Date the Case Was Filed

| | | |
|---|---|---|
| **6.** | **Do you have any number you use to identify the debtor?** | ☐ No<br>☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1103 |

**7.  How much is the claim?**    $599,225.57 _____ . **Does this amount include interest or other charges?**
☐ No
☒ Yes.    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.  What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach any document supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Money Loaned

**9.  Is all or part of the claim secured?**
☐ No
☒ Yes.    The claim is secured by a lien on property.

**Nature of property:**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official form 410-A) with the *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:    66 MADISON AVENUE, JERSEY CITY, NJ 07304-2855

**Basis for perfection:**    Recorded Mortgage
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____
**Amount of the claim that is secured:**    $  $599,225.57 _____
**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $  $353,260.99 _____

**Annual Interest Rate** (when case was filed) 8.250%
☒ Fixed
☐ Variable

**10.  Is this claim based on a lease?**
☒ No
☐ Yes.    **Amount necessary to cure any default as of the date of the petition.**  $ _____

**11.  Is this claim subject to a right to setoff?**
☒ No
☐ Yes.    Identify the property: _____

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ | No | | |
| | | ☐ | Yes. *Check all that apply:* | | **Amount entitled to priority** |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | | ☐ Domestic support obligation (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $ |
| | | | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family or household use. 11 U.S.C. § 507(a)(7). | | $ |
| | | | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $ |
| | | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $ |
| | | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $ |
| | | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $ |
| | | | *Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

## Part 3:  Sign Below

**The person completing this claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. § 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    October 1, 2019
                    MM / DD / YYYY

/s/ Nicholas V. Rogers
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Nicholas V. Rogers, Esq. | | |
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Phelan Hallinan Diamond & Jones, PC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1617 JFK Boulevard, Suite 1400 | | |
| | Philadelphia, PA 19103 | | |
| Contact phone | 856-813-5500 | Email | nicholas.rogers@phelanhallinan.com |

Mortgage Proof of Claim Attachment                                                                                    (12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 19-24262 JKS | Principal balance: | $276,666.45 | Principal & interest due: | $232,052.04 | Principal & interest: | $2,148.63 |
| Debtor 1: | ALMOATAZ B. BASUONI, JR | Deferred Principal: | $0.00 | Prepetition fees due: | $7,957.94 | Monthly escrow: | $952.31 |
| Debtor 2: | | Interest due: | $206,819.50 | Escrow deficiency for funds advanced: | $107,781.68 | Private mortgage insurance: | $0.00 |
| Last 4 digits to identify: | 1103 | Fees, costs due: | $7,957.94 | Projected escrow shortage: | $5,469.33 | Total monthly payment: | $3,100.94 |
| Creditor: | CITIGROUP MORTGAGE LOAN TRUST INC ** | Escrow deficiency for funds advanced: | $107,781.68 | Less funds on hand: | - $0.00 | | |
| Servicer: | CENLAR FSB. | Less total funds on hand: | - $0.00 | Total prepetition arrearage: | $353,260.99 | | |
| Fixed accrual/daily simple interest/other: | Fixed Accrual | Total debt: | $599,225.57 | | | | |

** CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE

### Part 5: Loan Payment History from First Date of Default:

| | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual Due Date | G. Prin. Int & esc past due balance | H. Amount to Principal | I. Amount to Interest | J. Amount to Escrow | K. Amount to Fees or Charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| 07/01/2010 | | | | | | | | | | | | $276,911.31 | | ($10,859.13) | $0.00 | $0.00 |
| 07/01/2010 | $2,841.39 | | | Payment Due | | $2,841.39 | | | | | | $276,911.31 | | ($10,859.13) | $0.00 | $0.00 |
| 07/16/2010 | | $2,841.39 | | Payment Applied | 07/01/2010 | $0.00 | $244.86 | $1,903.77 | $692.76 | | | $276,666.45 | | ($10,166.37) | $0.00 | $0.00 |
| 08/01/2010 | $3,226.41 | | | Payment Due | | $3,226.41 | | | | | | $276,666.45 | | ($10,166.37) | $0.00 | $0.00 |
| 08/13/2010 | | | $1,725.72 | Escrow Advance - Taxes | | $3,226.41 | | | ($1,725.72) | | | $276,666.45 | | ($11,892.09) | $0.00 | $0.00 |
| 09/01/2010 | $3,226.41 | | | Payment Due | | $6,452.82 | | | | | | $276,666.45 | | ($11,892.09) | $0.00 | $0.00 |
| 09/15/2010 | | $2,841.39 | | Funds Received | | $6,452.82 | | | | | $2,841.39 | $276,666.45 | | ($11,892.09) | $0.00 | $2,841.39 |
| 09/23/2010 | | | $1,367.00 | Escrow Advance - Insurance | | $6,452.82 | | | ($1,367.00) | | | $276,666.45 | | ($13,259.09) | $0.00 | $2,841.39 |
| 10/01/2010 | $3,226.41 | | | Payment Due | | $9,679.23 | | | | | | $276,666.45 | | ($13,259.09) | $0.00 | $2,841.39 |
| 10/15/2010 | | | $13.50 | Property Inspection | | $9,679.23 | | | | ($13.50) | | $276,666.45 | | ($13,259.09) | $13.50 | $2,841.39 |
| 11/01/2010 | $3,226.41 | | | Payment Due | | $12,905.64 | | | | | | $276,666.45 | | ($13,259.09) | $13.50 | $2,841.39 |
| 11/03/2010 | | | $1,725.71 | Escrow Advance - Taxes | | $12,905.64 | | | ($1,725.71) | | | $276,666.45 | | ($14,984.80) | $13.50 | $2,841.39 |
| 11/04/2010 | | | $1,954.55 | Escrow Advance - Taxes | | $12,905.64 | | | ($1,954.55) | | | $276,666.45 | | ($16,939.35) | $13.50 | $2,841.39 |
| 11/04/2010 | | | $364.59 | Escrow Advance - Taxes | | $12,905.64 | | | ($364.59) | | | $276,666.45 | | ($17,303.94) | $13.50 | $2,841.39 |
| 11/19/2010 | | | $13.50 | Property Inspection | | $12,905.64 | | | | ($13.50) | | $276,666.45 | | ($17,303.94) | $27.00 | $2,841.39 |
| 12/01/2010 | $3,226.41 | | | Payment Due | | $16,132.05 | | | | | | $276,666.45 | | ($17,303.94) | $27.00 | $2,841.39 |
| 12/16/2010 | | | $13.50 | Property Inspection | | $16,132.05 | | | | ($13.50) | | $276,666.45 | | ($17,303.94) | $40.50 | $2,841.39 |
| 01/01/2011 | $3,226.41 | | | Payment Due | | $19,358.46 | | | | | | $276,666.45 | | ($17,303.94) | $40.50 | $2,841.39 |
| 01/07/2011 | | | $1,734.38 | Escrow Advance - Taxes | | $19,358.46 | | | ($1,734.38) | | | $276,666.45 | | ($19,038.32) | $40.50 | $2,841.39 |

Official Form 410                                    Proof of Claim                                    page 1

| Date | | | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/19/2011 | | $13.50 | Property Inspection | $19,358.46 | | ($13.50) | $276,666.45 | ($19,038.32) | $54.00 | $2,841.39 |
| 02/01/2011 | $3,226.41 | | Payment Due | $22,584.87 | | | $276,666.45 | ($19,038.32) | $54.00 | $2,841.39 |
| 02/15/2011 | | $13.50 | Property Inspection | $22,584.87 | | ($13.50) | $276,666.45 | ($19,038.32) | $67.50 | $2,841.39 |
| 03/01/2011 | $3,226.41 | | Payment Due | $25,811.28 | | | $276,666.45 | ($19,038.32) | $67.50 | $2,841.39 |
| 03/23/2011 | | $13.50 | Property Inspection | $25,811.28 | | ($13.50) | $276,666.45 | ($19,038.32) | $81.00 | $2,841.39 |
| 04/01/2011 | $3,226.41 | | Payment Due | $29,037.69 | | | $276,666.45 | ($19,038.32) | $81.00 | $2,841.39 |
| 04/08/2011 | | $1,734.38 | Escrow Advance - Taxes | $29,037.69 | ($1,734.38) | | $276,666.45 | ($20,772.70) | $81.00 | $2,841.39 |
| 04/19/2011 | | $13.50 | Property Inspection | $29,037.69 | | ($13.50) | $276,666.45 | ($20,772.70) | $94.50 | $2,841.39 |
| 05/01/2011 | $3,226.41 | | Payment Due | $32,264.10 | | | $276,666.45 | ($20,772.70) | $94.50 | $2,841.39 |
| 05/19/2011 | | | Credit to Escrow | $32,264.10 | $2,841.39 | ($2,841.39) | $276,666.45 | ($17,931.31) | $94.50 | $0.00 |
| 06/01/2011 | $3,226.41 | | Payment Due | $35,490.51 | | | $276,666.45 | ($17,931.31) | $94.50 | $0.00 |
| 06/08/2011 | | $13.50 | Property Inspection | $35,490.51 | | ($13.50) | $276,666.45 | ($17,931.31) | $108.00 | $0.00 |
| 07/01/2011 | $3,226.41 | | Payment Due | $38,716.92 | | | $276,666.45 | ($17,931.31) | $108.00 | $0.00 |
| 07/12/2011 | | $1,802.72 | Escrow Advance - Taxes | $38,716.92 | ($1,802.72) | | $276,666.45 | ($19,734.03) | $108.00 | $0.00 |
| 07/12/2011 | | $141.86 | Escrow Advance - Taxes | $38,716.92 | ($141.86) | | $276,666.45 | ($19,875.89) | $108.00 | $0.00 |
| 07/12/2011 | | $2,150.18 | Escrow Advance - Taxes | $38,716.92 | ($2,150.18) | | $276,666.45 | ($22,026.07) | $108.00 | $0.00 |
| 07/14/2011 | | $13.50 | Property Inspection | $38,716.92 | | ($13.50) | $276,666.45 | ($22,026.07) | $121.50 | $0.00 |
| 07/19/2011 | | $13.50 | Property Inspection | $38,716.92 | | ($13.50) | $276,666.45 | ($22,026.07) | $135.00 | $0.00 |
| 08/01/2011 | $3,226.41 | | Payment Due | $41,943.33 | | | $276,666.45 | ($22,026.07) | $135.00 | $0.00 |
| 09/01/2011 | $3,226.41 | | Payment Due | $45,169.74 | | | $276,666.45 | ($22,026.07) | $135.00 | $0.00 |
| 09/07/2011 | | $13.50 | Property Inspection | $45,169.74 | | ($13.50) | $276,666.45 | ($22,026.07) | $148.50 | $0.00 |
| 09/23/2011 | | $1,335.00 | Escrow Advance - Insurance | $45,169.74 | ($1,335.00) | | $276,666.45 | ($23,361.07) | $148.50 | $0.00 |
| 10/01/2011 | $3,226.41 | | Payment Due | $48,396.15 | | | $276,666.45 | ($23,361.07) | $148.50 | $0.00 |
| 10/05/2011 | | $13.50 | Property Inspection | $48,396.15 | | ($13.50) | $276,666.45 | ($23,361.07) | $162.00 | $0.00 |
| 10/23/2011 | | $1,771.56 | Escrow Advance - Taxes | $48,396.15 | ($1,771.56) | | $276,666.45 | ($25,132.63) | $162.00 | $0.00 |
| 11/01/2011 | $3,226.41 | | Payment Due | $51,622.56 | | | $276,666.45 | ($25,132.63) | $162.00 | $0.00 |
| 11/03/2011 | | $13.50 | Property Inspection | $51,622.56 | | ($13.50) | $276,666.45 | ($25,132.63) | $175.50 | $0.00 |
| 11/25/2011 | | $13.50 | Property Inspection | $51,622.56 | | ($13.50) | $276,666.45 | ($25,132.63) | $189.00 | $0.00 |
| 12/01/2011 | $3,226.41 | | Payment Due | $54,848.97 | | | $276,666.45 | ($25,132.63) | $189.00 | $0.00 |
| 01/01/2012 | $3,226.41 | | Payment Due | $58,075.38 | | | $276,666.45 | ($25,132.63) | $189.00 | $0.00 |
| 01/10/2012 | | $13.50 | Property Inspection | $58,075.38 | | ($13.50) | $276,666.45 | ($25,132.63) | $202.50 | $0.00 |
| 02/01/2012 | $3,226.41 | | Payment Due | $61,301.79 | | | $276,666.45 | ($25,132.63) | $202.50 | $0.00 |
| 02/03/2012 | | $13.50 | Property Inspection | $61,301.79 | | ($13.50) | $276,666.45 | ($25,132.63) | $216.00 | $0.00 |
| 02/09/2012 | | $4,414.64 | Escrow Advance - Taxes | $61,301.79 | ($4,414.64) | | $276,666.45 | ($29,547.27) | $216.00 | $0.00 |
| 02/09/2012 | | $399.96 | Escrow Advance - Taxes | $61,301.79 | ($399.96) | | $276,666.45 | ($29,947.23) | $216.00 | $0.00 |
| 02/09/2012 | | $1,760.76 | Escrow Advance - Taxes | $61,301.79 | ($1,760.76) | | $276,666.45 | ($31,707.99) | $216.00 | $0.00 |
| 02/28/2012 | | $13.50 | Property Inspection | $61,301.79 | | ($13.50) | $276,666.45 | ($31,707.99) | $229.50 | $0.00 |
| 03/01/2012 | $3,226.41 | | Payment Due | $64,528.20 | | | $276,666.45 | ($31,707.99) | $229.50 | $0.00 |
| 04/01/2012 | $3,226.41 | | Payment Due | $67,754.61 | | | $276,666.45 | ($31,707.99) | $229.50 | $0.00 |
| 04/04/2012 | | $13.50 | Property Inspection | $67,754.61 | | ($13.50) | $276,666.45 | ($31,707.99) | $243.00 | $0.00 |
| 04/20/2012 | | $1,760.76 | Escrow Advance - Taxes | $67,754.61 | ($1,760.76) | | $276,666.45 | ($33,468.75) | $243.00 | $0.00 |
| 05/01/2012 | $3,226.41 | | Payment Due | $70,981.02 | | | $276,666.45 | ($33,468.75) | $243.00 | $0.00 |
| 05/17/2012 | | $13.50 | Property Inspection | $70,981.02 | | ($13.50) | $276,666.45 | ($33,468.75) | $256.50 | $0.00 |
| 06/01/2012 | $3,226.41 | | Payment Due | $74,207.43 | | | $276,666.45 | ($33,468.75) | $256.50 | $0.00 |
| 07/01/2012 | $3,226.41 | | Payment Due | $77,433.84 | | | $276,666.45 | ($33,468.75) | $256.50 | $0.00 |
| 07/17/2012 | | $13.50 | Property Inspection | $77,433.84 | | ($13.50) | $276,666.45 | ($33,468.75) | $270.00 | $0.00 |
| 08/01/2012 | $3,226.41 | | Payment Due | $80,660.25 | | | $276,666.45 | ($33,468.75) | $270.00 | $0.00 |
| 08/06/2012 | | $13.50 | Property Inspection | $80,660.25 | | ($13.50) | $276,666.45 | ($33,468.75) | $283.50 | $0.00 |
| 08/14/2012 | | $1,849.20 | Escrow Advance - Taxes | $80,660.25 | ($1,849.20) | | $276,666.45 | ($35,317.95) | $283.50 | $0.00 |
| 08/27/2012 | | $13.50 | Property Inspection | $80,660.25 | | ($13.50) | $276,666.45 | ($35,317.95) | $297.00 | $0.00 |
| 09/01/2012 | $3,226.41 | | Payment Due | $83,886.66 | | | $276,666.45 | ($35,317.95) | $297.00 | $0.00 |
| 09/25/2012 | | $1,418.00 | Escrow Advance - Insurance | $83,886.66 | ($1,418.00) | | $276,666.45 | ($36,735.95) | $297.00 | $0.00 |
| 10/01/2012 | $3,226.41 | | Payment Due | $87,113.07 | | | $276,666.45 | ($36,735.95) | $297.00 | $0.00 |
| 10/12/2012 | | $1,849.20 | Escrow Advance - Taxes | $87,113.07 | ($1,849.20) | | $276,666.45 | ($38,585.15) | $297.00 | $0.00 |
| 10/17/2012 | | $13.50 | Property Inspection | $87,113.07 | | ($13.50) | $276,666.45 | ($38,585.15) | $310.50 | $0.00 |
| 11/01/2012 | $3,226.41 | | Payment Due | $90,339.48 | | | $276,666.45 | ($38,585.15) | $310.50 | $0.00 |
| 12/01/2012 | $3,226.41 | | Payment Due | $93,565.89 | | | $276,666.45 | ($38,585.15) | $310.50 | $0.00 |
| 12/03/2012 | | $13.50 | Property Inspection | $93,565.89 | | ($13.50) | $276,666.45 | ($38,585.15) | $324.00 | $0.00 |

| Date | | Amount | Description | Balance | | Credit | | Principal | Escrow | Total | Fees |
|------|--|--------|-------------|---------|--|--------|--|-----------|--------|-------|------|
| 12/11/2012 | | $35.00 | Property Inspection | $93,565.89 | | ($35.00) | | $276,666.45 | ($38,585.15) | $359.00 | $0.00 |
| 12/27/2012 | | $13.50 | Property Inspection | $93,565.89 | | ($13.50) | | $276,666.45 | ($38,585.15) | $372.50 | $0.00 |
| 01/01/2013 | $3,226.41 | | Payment Due | $96,792.30 | | | | $276,666.45 | ($38,585.15) | $372.50 | $0.00 |
| 01/07/2013 | | $180.00 | Property Preservation | $96,792.30 | | ($180.00) | | $276,666.45 | ($38,585.15) | $552.50 | $0.00 |
| 01/28/2013 | | $13.50 | Property Inspection | $96,792.30 | | ($13.50) | | $276,666.45 | ($38,585.15) | $566.00 | $0.00 |
| 02/01/2013 | $3,226.41 | | Payment Due | $100,018.71 | | | | $276,666.45 | ($38,585.15) | $566.00 | $0.00 |
| 02/05/2013 | | $1,804.98 | Escrow Advance - Taxes | $100,018.71 | | ($1,804.98) | | $276,666.45 | ($40,390.13) | $566.00 | $0.00 |
| 02/21/2013 | | $108.74 | Escrow Advance - Taxes | $100,018.71 | | ($108.74) | | $276,666.45 | ($40,498.87) | $566.00 | $0.00 |
| 02/21/2013 | | $845.99 | Escrow Advance - Taxes | $100,018.71 | | ($845.99) | | $276,666.45 | ($41,344.86) | $566.00 | $0.00 |
| 03/01/2013 | $3,226.41 | | Payment Due | $103,245.12 | | | | $276,666.45 | ($41,344.86) | $566.00 | $0.00 |
| 03/04/2013 | | $13.50 | Property Inspection | $103,245.12 | | ($13.50) | | $276,666.45 | ($41,344.86) | $579.50 | $0.00 |
| 04/01/2013 | $3,226.41 | | Payment Due | $106,471.53 | | | | $276,666.45 | ($41,344.86) | $579.50 | $0.00 |
| 04/02/2013 | | $13.50 | Property Inspection | $106,471.53 | | ($13.50) | | $276,666.45 | ($41,344.86) | $593.00 | $0.00 |
| 04/12/2013 | | $1,804.98 | Escrow Advance - Taxes | $106,471.53 | | ($1,804.98) | | $276,666.45 | ($43,149.84) | $593.00 | $0.00 |
| 04/17/2013 | | $35.00 | Property Inspection | $106,471.53 | | ($35.00) | | $276,666.45 | ($43,149.84) | $628.00 | $0.00 |
| 04/17/2013 | | $3.00 | Property Preservation | $106,471.53 | | ($3.00) | | $276,666.45 | ($43,149.84) | $631.00 | $0.00 |
| 05/01/2013 | $3,226.41 | | Payment Due | $109,697.94 | | | | $276,666.45 | ($43,149.84) | $631.00 | $0.00 |
| 05/01/2013 | | $13.50 | Property Inspection | $109,697.94 | | ($13.50) | | $276,666.45 | ($43,149.84) | $644.50 | $0.00 |
| 05/08/2013 | | $4.20 | Property Preservation | $109,697.94 | | ($4.20) | | $276,666.45 | ($43,149.84) | $648.70 | $0.00 |
| 05/08/2013 | | $6.00 | Property Preservation | $109,697.94 | | ($6.00) | | $276,666.45 | ($43,149.84) | $654.70 | $0.00 |
| 05/08/2013 | | $60.00 | Property Preservation | $109,697.94 | | ($60.00) | | $276,666.45 | ($43,149.84) | $714.70 | $0.00 |
| 05/14/2013 | | $35.00 | Property Inspection | $109,697.94 | | ($35.00) | | $276,666.45 | ($43,149.84) | $749.70 | $0.00 |
| 05/28/2013 | | $13.50 | Property Inspection | $109,697.94 | | ($13.50) | | $276,666.45 | ($43,149.84) | $763.20 | $0.00 |
| 05/29/2013 | | $2.10 | Property Preservation | $109,697.94 | | ($2.10) | | $276,666.45 | ($43,149.84) | $765.30 | $0.00 |
| 05/29/2013 | | $6.00 | Property Preservation | $109,697.94 | | ($6.00) | | $276,666.45 | ($43,149.84) | $771.30 | $0.00 |
| 05/29/2013 | | $30.00 | Property Preservation | $109,697.94 | | ($30.00) | | $276,666.45 | ($43,149.84) | $801.30 | $0.00 |
| 06/01/2013 | $3,226.41 | | Payment Due | $112,924.35 | | | | $276,666.45 | ($43,149.84) | $801.30 | $0.00 |
| 06/13/2013 | | $2.80 | Property Preservation | $112,924.35 | | ($2.80) | | $276,666.45 | ($43,149.84) | $804.10 | $0.00 |
| 06/13/2013 | | $6.00 | Property Preservation | $112,924.35 | | ($6.00) | | $276,666.45 | ($43,149.84) | $810.10 | $0.00 |
| 06/13/2013 | | $40.00 | Property Preservation | $112,924.35 | | ($40.00) | | $276,666.45 | ($43,149.84) | $850.10 | $0.00 |
| 06/28/2013 | | $2.80 | Property Preservation | $112,924.35 | | ($2.80) | | $276,666.45 | ($43,149.84) | $852.90 | $0.00 |
| 06/28/2013 | | $6.00 | Property Preservation | $112,924.35 | | ($6.00) | | $276,666.45 | ($43,149.84) | $858.90 | $0.00 |
| 06/28/2013 | | $40.00 | Property Preservation | $112,924.35 | | ($40.00) | | $276,666.45 | ($43,149.84) | $898.90 | $0.00 |
| 07/01/2013 | $3,226.41 | | Payment Due | $116,150.76 | | | | $276,666.45 | ($43,149.84) | $898.90 | $0.00 |
| 07/25/2013 | | $30.00 | Property Preservation | $116,150.76 | | ($30.00) | | $276,666.45 | ($43,149.84) | $928.90 | $0.00 |
| 07/25/2013 | | $60.00 | Property Preservation | $116,150.76 | | ($60.00) | | $276,666.45 | ($43,149.84) | $988.90 | $0.00 |
| 07/30/2013 | | $1,775.07 | Escrow Advance - Taxes | $116,150.76 | | ($1,775.07) | | $276,666.45 | ($44,924.91) | $988.90 | $0.00 |
| 08/01/2013 | $3,226.41 | | Payment Due | $119,377.17 | | | | $276,666.45 | ($44,924.91) | $988.90 | $0.00 |
| 08/23/2013 | | $2.80 | Property Preservation | $119,377.17 | | ($2.80) | | $276,666.45 | ($44,924.91) | $991.70 | $0.00 |
| 08/23/2013 | | $6.00 | Property Preservation | $119,377.17 | | ($6.00) | | $276,666.45 | ($44,924.91) | $997.70 | $0.00 |
| 08/23/2013 | | $40.00 | Property Preservation | $119,377.17 | | ($40.00) | | $276,666.45 | ($44,924.91) | $1,037.70 | $0.00 |
| 08/28/2013 | | $13.50 | Property Inspection | $119,377.17 | | ($13.50) | | $276,666.45 | ($44,924.91) | $1,051.20 | $0.00 |
| 09/01/2013 | $3,226.41 | | Payment Due | $122,603.58 | | | | $276,666.45 | ($44,924.91) | $1,051.20 | $0.00 |
| 09/09/2013 | | $2.80 | Property Preservation | $122,603.58 | | ($2.80) | | $276,666.45 | ($44,924.91) | $1,054.00 | $0.00 |
| 09/09/2013 | | $6.00 | Property Preservation | $122,603.58 | | ($6.00) | | $276,666.45 | ($44,924.91) | $1,060.00 | $0.00 |
| 09/09/2013 | | $40.00 | Property Preservation | $122,603.58 | | ($40.00) | | $276,666.45 | ($44,924.91) | $1,100.00 | $0.00 |
| 09/19/2013 | | $2.80 | Property Preservation | $122,603.58 | | ($2.80) | | $276,666.45 | ($44,924.91) | $1,102.80 | $0.00 |
| 09/19/2013 | | $6.00 | Property Preservation | $122,603.58 | | ($6.00) | | $276,666.45 | ($44,924.91) | $1,108.80 | $0.00 |
| 09/19/2013 | | $40.00 | Property Preservation | $122,603.58 | | ($40.00) | | $276,666.45 | ($44,924.91) | $1,148.80 | $0.00 |
| 09/23/2013 | | $1,771.00 | Escrow Advance - Insurance | $122,603.58 | | ($1,771.00) | | $276,666.45 | ($46,695.91) | $1,148.80 | $0.00 |
| 10/01/2013 | $3,226.41 | | Payment Due | $125,829.99 | | | | $276,666.45 | ($46,695.91) | $1,148.80 | $0.00 |
| 10/02/2013 | | $2.80 | Property Preservation | $125,829.99 | | ($2.80) | | $276,666.45 | ($46,695.91) | $1,151.60 | $0.00 |
| 10/02/2013 | | $6.00 | Property Preservation | $125,829.99 | | ($6.00) | | $276,666.45 | ($46,695.91) | $1,157.60 | $0.00 |
| 10/02/2013 | | $40.00 | Property Preservation | $125,829.99 | | ($40.00) | | $276,666.45 | ($46,695.91) | $1,197.60 | $0.00 |
| 10/02/2013 | | $13.50 | Property Inspection | $125,829.99 | | ($13.50) | | $276,666.45 | ($46,695.91) | $1,211.10 | $0.00 |
| 10/15/2013 | | $2.80 | Property Preservation | $125,829.99 | | ($2.80) | | $276,666.45 | ($46,695.91) | $1,213.90 | $0.00 |
| 10/15/2013 | | $6.00 | Property Preservation | $125,829.99 | | ($6.00) | | $276,666.45 | ($46,695.91) | $1,219.90 | $0.00 |
| 10/15/2013 | | $40.00 | Property Preservation | $125,829.99 | | ($40.00) | | $276,666.45 | ($46,695.91) | $1,259.90 | $0.00 |

| Date | | Amount | Description | Balance | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 10/18/2013 | | $1,946.68 | Escrow Advance - Taxes | $125,829.99 | ($1,946.68) | | $276,666.45 | ($48,642.59) | $1,259.90 | $0.00 |
| 10/29/2013 | | $2.80 | Property Preservation | $125,829.99 | ($2.80) | | $276,666.45 | ($48,642.59) | $1,262.70 | $0.00 |
| 10/29/2013 | | $6.00 | Property Preservation | $125,829.99 | ($6.00) | | $276,666.45 | ($48,642.59) | $1,268.70 | $0.00 |
| 10/29/2013 | | $40.00 | Property Preservation | $125,829.99 | ($40.00) | | $276,666.45 | ($48,642.59) | $1,308.70 | $0.00 |
| 10/31/2013 | | $13.50 | Property Inspection | $125,829.99 | ($13.50) | | $276,666.45 | ($48,642.59) | $1,322.20 | $0.00 |
| 11/01/2013 | $3,226.41 | | Payment Due | $129,056.40 | | | $276,666.45 | ($48,642.59) | $1,322.20 | $0.00 |
| 11/27/2013 | | $35.00 | Property Preservation | $129,056.40 | ($35.00) | | $276,666.45 | ($48,642.59) | $1,357.20 | $0.00 |
| 11/27/2013 | | $1.50 | Property Preservation | $129,056.40 | ($1.50) | | $276,666.45 | ($48,642.59) | $1,358.70 | $0.00 |
| 12/01/2013 | $3,226.41 | | Payment Due | $132,282.81 | | | $276,666.45 | ($48,642.59) | $1,358.70 | $0.00 |
| 12/03/2013 | | $13.50 | Property Inspection | $132,282.81 | ($13.50) | | $276,666.45 | ($48,642.59) | $1,372.20 | $0.00 |
| 12/20/2013 | | $3.00 | Property Preservation | $132,282.81 | ($3.00) | | $276,666.45 | ($48,642.59) | $1,375.20 | $0.00 |
| 12/21/2013 | | $3,164.22 | Escrow Advance - Taxes | $132,282.81 | ($3,164.22) | | $276,666.45 | ($51,806.81) | $1,375.20 | $0.00 |
| 12/30/2013 | | $13.50 | Property Inspection | $132,282.81 | ($13.50) | | $276,666.45 | ($51,806.81) | $1,388.70 | $0.00 |
| 01/01/2014 | $3,226.41 | | Payment Due | $135,509.22 | | | $276,666.45 | ($51,806.81) | $1,388.70 | $0.00 |
| 01/14/2014 | | $1,875.84 | Escrow Advance - Taxes | $135,509.22 | ($1,875.84) | | $276,666.45 | ($53,682.65) | $1,388.70 | $0.00 |
| 01/14/2014 | | $95.00 | Property Preservation | $135,509.22 | ($95.00) | | $276,666.45 | ($53,682.65) | $1,483.70 | $0.00 |
| 01/28/2014 | | $35.00 | Property Preservation | $135,509.22 | ($35.00) | | $276,666.45 | ($53,682.65) | $1,518.70 | $0.00 |
| 01/28/2014 | | $1.50 | Property Preservation | $135,509.22 | ($1.50) | | $276,666.45 | ($53,682.65) | $1,520.20 | $0.00 |
| 01/30/2014 | | $13.50 | Property Inspection | $135,509.22 | ($13.50) | | $276,666.45 | ($53,682.65) | $1,533.70 | $0.00 |
| 02/01/2014 | $3,226.41 | | Payment Due | $138,735.63 | | | $276,666.45 | ($53,682.65) | $1,533.70 | $0.00 |
| 03/01/2014 | $3,226.41 | | Payment Due | $141,962.04 | | | $276,666.45 | ($53,682.65) | $1,533.70 | $0.00 |
| 03/03/2014 | | $13.50 | Property Inspection | $141,962.04 | ($13.50) | | $276,666.45 | ($53,682.65) | $1,547.20 | $0.00 |
| 04/01/2014 | $3,226.41 | | Payment Due | $145,188.45 | | | $276,666.45 | ($53,682.65) | $1,547.20 | $0.00 |
| 04/04/2014 | | $13.50 | Property Inspection | $145,188.45 | ($13.50) | | $276,666.45 | ($53,682.65) | $1,560.70 | $0.00 |
| 04/11/2014 | | $1,875.83 | Escrow Advance - Taxes | $145,188.45 | ($1,875.83) | | $276,666.45 | ($55,558.48) | $1,560.70 | $0.00 |
| 05/01/2014 | $3,226.41 | | Payment Due | $148,414.86 | | | $276,666.45 | ($55,558.48) | $1,560.70 | $0.00 |
| 05/05/2014 | | $13.50 | Property Inspection | $148,414.86 | ($13.50) | | $276,666.45 | ($55,558.48) | $1,574.20 | $0.00 |
| 06/01/2014 | $3,226.41 | | Payment Due | $151,641.27 | | | $276,666.45 | ($55,558.48) | $1,574.20 | $0.00 |
| 06/16/2014 | | $13.50 | Property Inspection | $151,641.27 | ($13.50) | | $276,666.45 | ($55,558.48) | $1,587.70 | $0.00 |
| 07/01/2014 | $3,226.41 | | Payment Due | $154,867.68 | | | $276,666.45 | ($55,558.48) | $1,587.70 | $0.00 |
| 07/07/2014 | | $13.50 | Property Inspection | $154,867.68 | ($13.50) | | $276,666.45 | ($55,558.48) | $1,601.20 | $0.00 |
| 07/08/2014 | | | Credit to Fees/Charges | $154,867.68 | | $13.50 | $276,666.45 | ($55,558.48) | $1,587.70 | $0.00 |
| 07/17/2014 | | $200.00 | Legal Costs | $154,867.68 | ($200.00) | | $276,666.45 | ($55,558.48) | $1,787.70 | $0.00 |
| 07/17/2014 | | $400.00 | Legal Costs | $154,867.68 | ($400.00) | | $276,666.45 | ($55,558.48) | $2,187.70 | $0.00 |
| 07/17/2014 | | $100.00 | Legal Costs | $154,867.68 | ($100.00) | | $276,666.45 | ($55,558.48) | $2,287.70 | $0.00 |
| 07/17/2014 | | | Credit to Fees/Charges | $154,867.68 | | $25.00 | $276,666.45 | ($55,558.48) | $2,262.70 | $0.00 |
| 07/17/2014 | | $1,507.50 | Legal Fees | $154,867.68 | ($1,507.50) | | $276,666.45 | ($55,558.48) | $3,770.20 | $0.00 |
| 07/22/2014 | | $1,860.26 | Escrow Advance - Taxes | $154,867.68 | ($1,860.26) | | $276,666.45 | ($57,418.74) | $3,770.20 | $0.00 |
| 08/01/2014 | $3,226.41 | | Payment Due | $158,094.09 | | | $276,666.45 | ($57,418.74) | $3,770.20 | $0.00 |
| 08/04/2014 | | $13.50 | Property Inspection | $158,094.09 | ($13.50) | | $276,666.45 | ($57,418.74) | $3,783.70 | $0.00 |
| 08/18/2014 | | $50.00 | Legal Costs | $158,094.09 | ($50.00) | | $276,666.45 | ($57,418.74) | $3,833.70 | $0.00 |
| 08/18/2014 | | $550.00 | Legal Fees | $158,094.09 | ($550.00) | | $276,666.45 | ($57,418.74) | $4,383.70 | $0.00 |
| 08/18/2014 | | | Credit to Fees/Charges | $158,094.09 | | $447.76 | $276,666.45 | ($57,418.74) | $3,935.94 | $0.00 |
| 09/01/2014 | $3,226.41 | | Payment Due | $161,320.50 | | | $276,666.45 | ($57,418.74) | $3,935.94 | $0.00 |
| 09/02/2014 | | $13.50 | Property Inspection | $161,320.50 | ($13.50) | | $276,666.45 | ($57,418.74) | $3,949.44 | $0.00 |
| 09/03/2014 | | | Credit to Fees/Charges | $161,320.50 | | $13.50 | $276,666.45 | ($57,418.74) | $3,935.94 | $0.00 |
| 10/01/2014 | $3,226.41 | | Payment Due | $164,546.91 | | | $276,666.45 | ($57,418.74) | $3,935.94 | $0.00 |
| 10/01/2014 | | $13.50 | Property Inspection | $164,546.91 | ($13.50) | | $276,666.45 | ($57,418.74) | $3,949.44 | $0.00 |
| 10/16/2014 | | $2,336.00 | Escrow Advance - Insurance | $164,546.91 | ($2,336.00) | | $276,666.45 | ($59,754.74) | $3,949.44 | $0.00 |
| 10/24/2014 | | $1,859.24 | Escrow Advance - Taxes | $164,546.91 | ($1,859.24) | | $276,666.45 | ($61,613.98) | $3,949.44 | $0.00 |
| 11/01/2014 | $3,226.41 | | Payment Due | $167,773.32 | | | $276,666.45 | ($61,613.98) | $3,949.44 | $0.00 |
| 11/04/2014 | | $13.50 | Property Inspection | $167,773.32 | ($13.50) | | $276,666.45 | ($61,613.98) | $3,962.94 | $0.00 |
| 11/14/2014 | | $35.00 | Property Preservation | $167,773.32 | ($35.00) | | $276,666.45 | ($61,613.98) | $3,997.94 | $0.00 |
| 12/01/2014 | $3,226.41 | | Payment Due | $170,999.73 | | | $276,666.45 | ($61,613.98) | $3,997.94 | $0.00 |
| 12/01/2014 | | $13.50 | Property Inspection | $170,999.73 | ($13.50) | | $276,666.45 | ($61,613.98) | $4,011.44 | $0.00 |
| 01/01/2015 | $3,226.41 | | Payment Due | $174,226.14 | | | $276,666.45 | ($61,613.98) | $4,011.44 | $0.00 |
| 01/07/2015 | | $13.50 | Property Inspection | $174,226.14 | ($13.50) | | $276,666.45 | ($61,613.98) | $4,024.94 | $0.00 |
| 01/08/2015 | | | Credit to Fees/Charges | $174,226.14 | | $13.50 | $276,666.45 | ($61,613.98) | $4,011.44 | $0.00 |

| Date | Due Amt | Txn Amt | Description | Balance | Escrow Disb | Fee/Credit | | Escrow Bal | Fee Bal | |
|---|---|---|---|---|---|---|---|---|---|---|
| 01/16/2015 | | $1,867.80 | Escrow Advance - Taxes | $174,226.14 | ($1,867.80) | | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 01/29/2015 | | | Credit to Fees/Charges | $174,226.14 | | $13.50 | $276,666.45 | ($63,481.78) | $3,997.94 | $0.00 |
| 02/01/2015 | $3,226.41 | | Payment Due | $177,452.55 | | | $276,666.45 | ($63,481.78) | $3,997.94 | $0.00 |
| 02/06/2015 | | $13.50 | Property Inspection | $177,452.55 | | ($13.50) | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 03/01/2015 | $3,226.41 | | Payment Due | $180,678.96 | | | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 03/09/2015 | | $13.50 | Property Inspection | $180,678.96 | | ($13.50) | $276,666.45 | ($63,481.78) | $4,024.94 | $0.00 |
| 03/10/2015 | | | Credit to Fees/Charges | $180,678.96 | | $13.50 | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 04/01/2015 | $3,226.41 | | Payment Due | $183,905.37 | | | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 04/09/2015 | | $13.50 | Property Inspection | $183,905.37 | | ($13.50) | $276,666.45 | ($63,481.78) | $4,024.94 | $0.00 |
| 04/10/2015 | | | Credit to Fees/Charges | $183,905.37 | | $13.50 | $276,666.45 | ($63,481.78) | $4,011.44 | $0.00 |
| 04/17/2015 | | $1,867.79 | Escrow Advance - Taxes | $183,905.37 | ($1,867.79) | | $276,666.45 | ($65,349.57) | $4,011.44 | $0.00 |
| 04/24/2015 | | | Credit to Fees/Charges | $183,905.37 | | $13.50 | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 05/01/2015 | $3,226.41 | | Payment Due | $187,131.78 | | | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 05/11/2015 | | $13.50 | Property Inspection | $187,131.78 | | ($13.50) | $276,666.45 | ($65,349.57) | $4,011.44 | $0.00 |
| 05/12/2015 | | | Credit to Fees/Charges | $187,131.78 | | $13.50 | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 06/01/2015 | $3,226.41 | | Payment Due | $190,358.19 | | | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 06/10/2015 | | $13.50 | Property Inspection | $190,358.19 | | ($13.50) | $276,666.45 | ($65,349.57) | $4,011.44 | $0.00 |
| 06/11/2015 | | | Credit to Fees/Charges | $190,358.19 | | $13.50 | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 07/01/2015 | $3,226.41 | | Payment Due | $193,584.60 | | | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 07/10/2015 | | $13.50 | Property Inspection | $193,584.60 | | ($13.50) | $276,666.45 | ($65,349.57) | $4,011.44 | $0.00 |
| 07/13/2015 | | | Credit to Fees/Charges | $193,584.60 | | $13.50 | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 08/01/2015 | $3,226.41 | | Payment Due | $196,811.01 | | | $276,666.45 | ($65,349.57) | $3,997.94 | $0.00 |
| 08/11/2015 | | $1,891.91 | Escrow Advance - Taxes | $196,811.01 | ($1,891.91) | | $276,666.45 | ($67,241.48) | $3,997.94 | $0.00 |
| 08/14/2015 | | $13.50 | Property Inspection | $196,811.01 | | ($13.50) | $276,666.45 | ($67,241.48) | $4,011.44 | $0.00 |
| 09/01/2015 | $3,226.41 | | Payment Due | $200,037.42 | | | $276,666.45 | ($67,241.48) | $4,011.44 | $0.00 |
| 09/14/2015 | | $13.50 | Property Inspection | $200,037.42 | | ($13.50) | $276,666.45 | ($67,241.48) | $4,024.94 | $0.00 |
| 10/01/2015 | $3,226.41 | | Payment Due | $203,263.83 | | | $276,666.45 | ($67,241.48) | $4,024.94 | $0.00 |
| 10/12/2015 | | $13.50 | Property Inspection | $203,263.83 | | ($13.50) | $276,666.45 | ($67,241.48) | $4,038.44 | $0.00 |
| 10/13/2015 | | $1,891.91 | Escrow Advance - Taxes | $203,263.83 | ($1,891.91) | | $276,666.45 | ($69,133.39) | $4,038.44 | $0.00 |
| 10/15/2015 | | $2,357.02 | Escrow Advance - Insurance | $203,263.83 | ($2,357.02) | | $276,666.45 | ($71,490.41) | $4,038.44 | $0.00 |
| 11/01/2015 | $3,226.41 | | Payment Due | $206,490.24 | | | $276,666.45 | ($71,490.41) | $4,038.44 | $0.00 |
| 11/13/2015 | | $13.50 | Property Inspection | $206,490.24 | | ($13.50) | $276,666.45 | ($71,490.41) | $4,051.94 | $0.00 |
| 12/01/2015 | $3,226.41 | | Payment Due | $209,716.65 | | | $276,666.45 | ($71,490.41) | $4,051.94 | $0.00 |
| 12/11/2015 | | $13.50 | Property Inspection | $209,716.65 | | ($13.50) | $276,666.45 | ($71,490.41) | $4,065.44 | $0.00 |
| 01/01/2016 | $3,226.41 | | Payment Due | $212,943.06 | | | $276,666.45 | ($71,490.41) | $4,065.44 | $0.00 |
| 01/14/2016 | | $13.50 | Property Inspection | $212,943.06 | | ($13.50) | $276,666.45 | ($71,490.41) | $4,078.94 | $0.00 |
| 01/15/2016 | | $1,879.86 | Escrow Advance - Taxes | $212,943.06 | ($1,879.86) | | $276,666.45 | ($73,370.27) | $4,078.94 | $0.00 |
| 02/01/2016 | $3,226.41 | | Payment Due | $216,169.47 | | | $276,666.45 | ($73,370.27) | $4,078.94 | $0.00 |
| 02/15/2016 | | $13.50 | Property Inspection | $216,169.47 | | ($13.50) | $276,666.45 | ($73,370.27) | $4,092.44 | $0.00 |
| 03/01/2016 | $3,226.41 | | Payment Due | $219,395.88 | | | $276,666.45 | ($73,370.27) | $4,092.44 | $0.00 |
| 03/16/2016 | | $13.50 | Property Inspection | $219,395.88 | | ($13.50) | $276,666.45 | ($73,370.27) | $4,105.94 | $0.00 |
| 04/01/2016 | $3,226.41 | | Payment Due | $222,622.29 | | | $276,666.45 | ($73,370.27) | $4,105.94 | $0.00 |
| 04/15/2016 | | $1,879.85 | Escrow Advance - Taxes | $222,622.29 | ($1,879.85) | | $276,666.45 | ($75,250.12) | $4,105.94 | $0.00 |
| 04/18/2016 | | $50.00 | Legal Costs | $222,622.29 | | ($50.00) | $276,666.45 | ($75,250.12) | $4,155.94 | $0.00 |
| 04/20/2016 | | $13.50 | Property Inspection | $222,622.29 | | ($13.50) | $276,666.45 | ($75,250.12) | $4,169.44 | $0.00 |
| 05/01/2016 | $3,226.41 | | Payment Due | $225,848.70 | | | $276,666.45 | ($75,250.12) | $4,169.44 | $0.00 |
| 05/16/2016 | | $13.50 | Property Inspection | $225,848.70 | | ($13.50) | $276,666.45 | ($75,250.12) | $4,182.94 | $0.00 |
| 06/01/2016 | $3,226.41 | | Payment Due | $229,075.11 | | | $276,666.45 | ($75,250.12) | $4,182.94 | $0.00 |
| 06/13/2016 | | $13.50 | Property Inspection | $229,075.11 | | ($13.50) | $276,666.45 | ($75,250.12) | $4,196.44 | $0.00 |
| 07/01/2016 | $3,226.41 | | Payment Due | $232,301.52 | | | $276,666.45 | ($75,250.12) | $4,196.44 | $0.00 |
| 07/18/2016 | | $13.50 | Property Inspection | $232,301.52 | | ($13.50) | $276,666.45 | ($75,250.12) | $4,209.94 | $0.00 |
| 08/01/2016 | $3,226.41 | | Payment Due | $235,527.93 | | | $276,666.45 | ($75,250.12) | $4,209.94 | $0.00 |
| 08/05/2016 | | $1,989.90 | Escrow Advance - Taxes | $235,527.93 | ($1,989.90) | | $276,666.45 | ($77,240.02) | $4,209.94 | $0.00 |
| 09/01/2016 | $3,226.41 | | Payment Due | $238,754.34 | | | $276,666.45 | ($77,240.02) | $4,209.94 | $0.00 |
| 10/01/2016 | $3,226.41 | | Payment Due | $241,980.75 | | | $276,666.45 | ($77,240.02) | $4,209.94 | $0.00 |
| 10/14/2016 | | $2,131.00 | Escrow Advance - Insurance | $241,980.75 | ($2,131.00) | | $276,666.45 | ($79,371.02) | $4,209.94 | $0.00 |
| 10/14/2016 | | $1,989.90 | Escrow Advance - Taxes | $241,980.75 | ($1,989.90) | | $276,666.45 | ($81,360.92) | $4,209.94 | $0.00 |
| 11/01/2016 | $3,226.41 | | Payment Due | $245,207.16 | | | $276,666.45 | ($81,360.92) | $4,209.94 | $0.00 |

| Date | | Amount | Description | Balance | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/07/2016 | | $50.00 | Legal Costs | $245,207.16 | | ($50.00) | | $276,666.45 | ($81,360.92) | $4,259.94 | $0.00 |
| 11/07/2016 | | $43.00 | Legal Costs | $245,207.16 | | ($43.00) | | $276,666.45 | ($81,360.92) | $4,302.94 | $0.00 |
| 11/07/2016 | | $10.00 | Legal Costs | $245,207.16 | | ($10.00) | | $276,666.45 | ($81,360.92) | $4,312.94 | $0.00 |
| 11/17/2016 | | $750.00 | Legal Fees | $245,207.16 | | ($750.00) | | $276,666.45 | ($81,360.92) | $5,062.94 | $0.00 |
| 12/01/2016 | $3,226.41 | | Payment Due | $248,433.57 | | | | $276,666.45 | ($81,360.92) | $5,062.94 | $0.00 |
| 12/23/2016 | | $1,187.97 | Escrow Advance - Taxes | $248,433.57 | | ($1,187.97) | | $276,666.45 | ($82,548.89) | $5,062.94 | $0.00 |
| 12/23/2016 | | $102.99 | Escrow Advance - Taxes | $248,433.57 | | ($102.99) | | $276,666.45 | ($82,651.88) | $5,062.94 | $0.00 |
| 01/01/2017 | $3,226.41 | | Payment Due | $251,659.98 | | | | $276,666.45 | ($82,651.88) | $5,062.94 | $0.00 |
| 02/01/2017 | $3,226.41 | | Payment Due | $254,886.39 | | | | $276,666.45 | ($82,651.88) | $5,062.94 | $0.00 |
| 02/06/2017 | | $1,934.88 | Escrow Advance - Taxes | $254,886.39 | | ($1,934.88) | | $276,666.45 | ($84,586.76) | $5,062.94 | $0.00 |
| 02/28/2017 | | $645.00 | Legal Fees | $254,886.39 | | ($645.00) | | $276,666.45 | ($84,586.76) | $5,707.94 | $0.00 |
| 03/01/2017 | $3,226.41 | | Payment Due | $258,112.80 | | | | $276,666.45 | ($84,586.76) | $5,707.94 | $0.00 |
| 03/13/2017 | | $1,800.00 | Sheriff Deposit | $258,112.80 | | ($1,800.00) | | $276,666.45 | ($84,586.76) | $7,507.94 | $0.00 |
| 04/01/2017 | $3,226.41 | | Payment Due | $261,339.21 | | | | $276,666.45 | ($84,586.76) | $7,507.94 | $0.00 |
| 04/21/2017 | | $1,763.26 | Escrow Advance - Taxes | $261,339.21 | | ($1,763.26) | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 05/01/2017 | $3,226.41 | | Payment Due | $264,565.62 | | | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 06/01/2017 | $3,226.41 | | Payment Due | $267,792.03 | | | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 07/01/2017 | $3,226.41 | | Payment Due | $271,018.44 | | | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 08/01/2017 | $3,226.41 | | Payment Due | $274,244.85 | | | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 09/01/2017 | $3,226.41 | | Payment Due | $277,471.26 | | | | $276,666.45 | ($86,350.02) | $7,507.94 | $0.00 |
| 09/15/2017 | | $1,984.62 | Escrow Advance - Taxes | $277,471.26 | | ($1,984.62) | | $276,666.45 | ($88,334.64) | $7,507.94 | $0.00 |
| 10/01/2017 | $3,226.41 | | Payment Due | $280,697.67 | | | | $276,666.45 | ($88,334.64) | $7,507.94 | $0.00 |
| 10/14/2017 | | $2,129.00 | Escrow Advance - Insurance | $280,697.67 | | ($2,129.00) | | $276,666.45 | ($90,463.64) | $7,507.94 | $0.00 |
| 10/19/2017 | | $1,984.62 | Escrow Advance - Taxes | $280,697.67 | | ($1,984.62) | | $276,666.45 | ($92,448.26) | $7,507.94 | $0.00 |
| 11/01/2017 | $3,226.41 | | Payment Due | $283,924.08 | | | | $276,666.45 | ($92,448.26) | $7,507.94 | $0.00 |
| 12/01/2017 | $3,226.41 | | Payment Due | $287,150.49 | | | | $276,666.45 | ($92,448.26) | $7,507.94 | $0.00 |
| 01/01/2018 | $3,226.41 | | Payment Due | $290,376.90 | | | | $276,666.45 | ($92,448.26) | $7,507.94 | $0.00 |
| 01/09/2018 | | $1,694.00 | Escrow Advance - Taxes | $290,376.90 | | ($1,694.00) | | $276,666.45 | ($94,142.26) | $7,507.94 | $0.00 |
| 01/10/2018 | | | Credit to Escrow | $290,376.90 | | $1,622.00 | | $276,666.45 | ($92,520.26) | $7,507.94 | $0.00 |
| 01/26/2018 | | $1,959.75 | Escrow Advance - Taxes | $290,376.90 | | ($1,959.75) | | $276,666.45 | ($94,480.01) | $7,507.94 | $0.00 |
| 02/01/2018 | $3,226.41 | | Payment Due | $293,603.31 | | | | $276,666.45 | ($94,480.01) | $7,507.94 | $0.00 |
| 03/01/2018 | $3,226.41 | | Payment Due | $296,829.72 | | | | $276,666.45 | ($94,480.01) | $7,507.94 | $0.00 |
| 04/01/2018 | $3,226.41 | | Payment Due | $300,056.13 | | | | $276,666.45 | ($94,480.01) | $7,507.94 | $0.00 |
| 04/20/2018 | | $1,873.94 | Escrow Advance - Taxes | $300,056.13 | | ($1,873.94) | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 05/01/2018 | $3,226.41 | | Payment Due | $303,282.54 | | | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 06/01/2018 | $3,226.41 | | Payment Due | $306,508.95 | | | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 07/01/2018 | $3,226.41 | | Payment Due | $309,735.36 | | | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 08/01/2018 | $3,226.41 | | Payment Due | $312,961.77 | | | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 09/01/2018 | $2,940.04 | | Payment Due | $315,901.81 | | | | $276,666.45 | ($96,353.95) | $7,507.94 | $0.00 |
| 09/26/2018 | | $2,510.20 | Escrow Advance - Taxes | $315,901.81 | | ($2,510.20) | | $276,666.45 | ($98,864.15) | $7,507.94 | $0.00 |
| 10/01/2018 | $2,940.04 | | Payment Due | $318,841.85 | | | | $276,666.45 | ($98,864.15) | $7,507.94 | $0.00 |
| 11/01/2018 | $2,940.04 | | Payment Due | $321,781.89 | | | | $276,666.45 | ($98,864.15) | $7,507.94 | $0.00 |
| 11/06/2018 | | $2,424.39 | Escrow Advance - Taxes | $321,781.89 | | ($2,424.39) | | $276,666.45 | ($101,288.54) | $7,507.94 | $0.00 |
| 12/01/2018 | $2,940.04 | | Payment Due | $324,721.93 | | | | $276,666.45 | ($101,288.54) | $7,507.94 | $0.00 |
| 12/18/2018 | | $2,109.00 | Escrow Advance - Insurance | $324,721.93 | | ($2,109.00) | | $276,666.45 | ($103,397.54) | $7,507.94 | $0.00 |
| 01/01/2019 | $2,940.04 | | Payment Due | $327,661.97 | | | | $276,666.45 | ($103,397.54) | $7,507.94 | $0.00 |
| 01/17/2019 | | $2,234.98 | Escrow Advance - Taxes | $327,661.97 | | ($2,234.98) | | $276,666.45 | ($105,632.52) | $7,507.94 | $0.00 |
| 02/01/2019 | $2,940.04 | | Payment Due | $330,602.01 | | | | $276,666.45 | ($105,632.52) | $7,507.94 | $0.00 |
| 03/01/2019 | $2,940.04 | | Payment Due | $333,542.05 | | | | $276,666.45 | ($105,632.52) | $7,507.94 | $0.00 |
| 04/01/2019 | $2,940.04 | | Payment Due | $336,482.09 | | | | $276,666.45 | ($105,632.52) | $7,507.94 | $0.00 |
| 04/03/2019 | | $15.00 | Property Inspection | $336,482.09 | | ($15.00) | | $276,666.45 | ($105,632.52) | $7,522.94 | $0.00 |
| 04/19/2019 | | $2,149.16 | Escrow Advance - Taxes | $336,482.09 | | ($2,149.16) | | $276,666.45 | ($107,781.68) | $7,522.94 | $0.00 |
| 05/01/2019 | $2,940.04 | | Payment Due | $339,422.13 | | | | $276,666.45 | ($107,781.68) | $7,522.94 | $0.00 |
| 05/06/2019 | | $15.00 | Property Inspection | $339,422.13 | | ($15.00) | | $276,666.45 | ($107,781.68) | $7,537.94 | $0.00 |
| 06/01/2019 | $2,940.04 | | Payment Due | $342,362.17 | | | | $276,666.45 | ($107,781.68) | $7,537.94 | $0.00 |
| 06/12/2019 | | $300.00 | Property Preservation | $342,362.17 | | ($300.00) | | $276,666.45 | ($107,781.68) | $7,837.94 | $0.00 |
| 06/12/2019 | | $90.00 | Property Preservation | $342,362.17 | | ($90.00) | | $276,666.45 | ($107,781.68) | $7,927.94 | $0.00 |
| 06/18/2019 | | $15.00 | Property Inspection | $342,362.17 | | ($15.00) | | $276,666.45 | ($107,781.68) | $7,942.94 | $0.00 |

| 07/01/2019 | $2,940.04 | | | Payment Due | | $345,302.21 | | | | $276,666.45 | ($107,781.68) | $7,942.94 | $0.00 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/12/2019 | | | $15.00 | Property Inspection | | $345,302.21 | | ($15.00) | | $276,666.45 | ($107,781.68) | $7,957.94 | $0.00 |
| 07/23/2019 | | | | BK Filed | | $345,302.21 | | | | $276,666.45 | ($107,781.68) | $7,957.94 | $0.00 |
| **Total** | | | | | | | | | | **$276,666.45** | **($107,781.68)** | **$7,957.94** | **$0.00** |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500

Attorneys for CITIGROUP MORTGAGE LOAN
TRUST INC. ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2007-AMC2, U.S. BANK
NATIONAL ASSOCIATION, AS TRUSTEE

| | |
|---|---|
| In Re: | Case No: 19-24262 - JKS |
| Almoataz B. Basuoni, Jr. | Judge: JOHN K. SHERWOOD |
| | Chapter: 13 |

## CERTIFICATION OF SERVICE

1.    I, Aaron Thomas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC,
who represents CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-
BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S.
BANK NATIONAL ASSOCIATION, AS TRUSTEE in the above captioned
matter.

☐ am the _____ in the above case and am representing
myself.

2.    On the date below, I sent a copy of the following pleadings and/or documents
to the parties listed below:

Proof of Claim

3.    I hereby certify under penalty of perjury that the above documents were sent
using the mode of service indicated.

Dated:    10/01/2019                          /s/ *Aaron Thomas*

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Mario M Blanch<br>440-65h Street<br>West New York, NJ 07093 | Debtor's Attorney | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |
| Marie-Ann Greenberg<br>Chapter 13 Standing Trustee<br>30 Two Bridges Rd<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br><br>☐ Regular Mail<br><br>☐ Certified mail/RR<br><br>☐ E-mail<br><br>☒ Notice of Electronic Filing (NEF)<br><br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.

# CENLAR®
CENTRAL LOAN ADMINISTRATION & REPORTING

PO Box 77404
Ewing, NJ 08628

AHMED A BASUONI
AL MOATOZ B BASUONI
5 EDWARD AVE
OLD BRIDGE NJ 08857-2101

08/06/19
LOAN NO:
https://www.loanadministration.com
Customer Service 855-839-6253

Page 1 of 1

| Please see the enclosed insert "Understanding Your Escrow Account Disclosure Statement". This handy guide is intended to help you understand your statement and answer some commonly asked questions about your escrow analysis. |
| --- |

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT

As you know, we are required to maintain an escrow account which is used to pay your real estate taxes and/or insurance premiums. This account must be analyzed annually to determine whether enough funds are being collected monthly, and whether the account has a shortage or surplus based on the anticipated activity.

### P R E S E N T   L O A N   P A Y M E N T

| Your present payment, 08/01/10 consists of: | Principal & Interest (P & I) | $2,148.63 |
| --- | --- | --- |
| | Escrow Deposit | $1,307.87 |
| **Total Loan Payment** | | **$3,456.50** |

### A N T I C I P A T E D   A N N U A L   D I S B U R S E M E N T S

These are the escrow items we anticipate we will collect for or pay on your behalf in the upcoming 12 month period. The dollar amount shown may be the last amount actually paid for that item, or may project the next amount due as defined by Federal law. Based on these anticipated disbursements, the amount of your escrow deposit is calculated and displayed here.

| Bills due in the upcoming year: | City Tax | $9,318.73 |
| --- | --- | --- |
| | Hazard Ins | $2,109.00 |
| **Annual Disbursements:** | **$11,427.73** | **One-Twelfth/Monthly   Amount:   $952.31** |

### A C C O U N T   H I S T O R Y

The following statement of activity in your escrow account from 09/18 through 07/19 displays actual activity as it occurred in your escrow account during that period. Your monthly mortgage payment was $3,456.50 and $1,307.87 went into your escrow account. If you received Account Projections with a prior analysis, they are included again here for comparison.

| Month | Payments Projected | Payments Actual | Disbursements Projected | Disbursements Actual | Description | Projected Escrow Account Balance | Actual Escrow Account Balance |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | **Beginning Balance** | **$28,524.82** | **-$105,632.52** |
| September | **791.41** | * | | | | 29,316.23 | -105,632.52 |
| October | 791.41 | * | 1,984.62 | * | R.E. TAX | 28,123.02 | -105,632.52 |
| November | **791.41** | * | | | | 28,914.43 | -105,632.52 |
| December | 791.41 | * | | | | 29,705.84 | -105,632.52 |
| January | 791.41 | * | 1,959.75 | * | R.E. TAX | 28,537.50 | -105,632.52 |
| January | | | 1,694.00 | * | HAZARD INS | 26,843.50 | -105,632.52 |
| February | 791.41 | * | | | | 27,634.91 | -105,632.52 |
| March | **791.41** | * | | | | 28,426.32 | -105,632.52 |
| April | 791.41 | * | 1,873.94 | * | R.E. TAX | 27,343.79 | -105,632.52 |
| April | | | | 2,149.16 * | R.E. TAX | 27,343.79 | -107,781.68 |
| May | **791.41** | * | | | | 28,135.20 | -107,781.68 |
| June | 791.41 | * | | | | 28,926.61 | -107,781.68 |
| July | 791.41 | 135,568.90 E* | 1,984.62 | | E*R.E. TAX | 27,733.40 | 27,787.22 |

### *** CONTINUED ON REVERSE SIDE ***

x

## S U R P L U S



# CENLAR®
CENTRAL LOAN ADMINISTRATION & REPORTING

Ahmed A Basuoni
Al Moatoz B Basuoni
5 Edward Ave
Old Bridge NJ 08857-2101

Loan Number:
Surplus Amount:       $22,317.89

Due to the delinquent status of your account, however, we will retain your surplus.

| | | | | | |
|---|---|---|---|---|---|
| July | | | 2,510.20 E | R.E. TAX | 27,733.40 | 25,277.02 |
| August | 791.41 | * | | | 28,524.81 |

An asterisk (*) beside an amount indicates a difference from projected activity either in the amount or the date. The letter E beside an amount indicates that the payment or disbursement has not yet occurred, but is estimated to occur as shown.

Last year we anticipated that Disbursements would be made from your Escrow Account during the period equaling $9,496.93. Under Federal Law, your lowest monthly balance should not have exceeded $1,582.82, or 1/6th of total anticipated payments from the account, unless your loan contract or State law specifies a lower amount.

Under your loan contract and State law your lowest monthly balance should not have exceeded $26,843.50.

## ACCOUNT PROJECTIONS

The following estimate of activity in your escrow account from 08/19 through 07/20 is provided for your information. All payments we anticipate receiving as well as disbursements we anticipate making on your behalf are included, along with the Projected Escrow Account Balance, derived by carrying forward your current actual escrow balance. The Required Escrow Account Balance displays the amount actually required to be on hand as specified by Federal law, State law and your loan documents, and may include a cushion of up to 1/6th of your Annual Disbursements. Please retain this statement for comparison with the actual activity in your account at the end of the next escrow account computation year.

| | Anticipated Amount | | | Projected Escrow | Required Escrow |
|---|---|---|---|---|---|
| Month | To Escrow | From Escrow | Description | Account Balance | Account Balance |
| | | | Beginning Balance | $25,277.02 | $2,959.13 |
| August | 952.31 | | | 26,229.33 | 3,911.44 |
| September | 952.31 | | | 27,181.64 | 4,863.75 |
| October | 952.31 | 2,424.39 | R.E. TAX | 25,709.56 | 3,391.67 |
| November | 952.31 | | | 26,661.87 | 4,343.98 |
| December | 952.31 | | | 27,614.18 | 5,296.29 |
| January | 952.31 | 2,234.98 | R.E. TAX | 26,331.51 | 4,013.62 |
| January | | 2,109.00 | HAZARD INS | 24,222.51 | 1,904.62 |
| February | 952.31 | | | 25,174.82 | 2,856.93 |
| March | 952.31 | | | 26,127.13 | 3,809.24 |
| April | 952.31 | 2,149.16 | R.E. TAX | 24,930.28 | 2,612.39 |
| May | 952.31 | | | 25,882.59 | 3,564.70 |
| June | 952.31 | | | 26,834.90 | 4,517.01 |
| July | 952.31 | 2,510.20 | R.E. TAX | 25,277.01 | 2,959.12 |

**Your Projected Escrow Account Balance as of 07/31/19 is $25,277.02. Your Required Beginning Escrow Balance according to this analysis should be $2,959.13.**
This means you have a Surplus of $22,317.89. This surplus must be returned to you unless it is less than $15.00, in which case we have the additional option of keeping it and lowering your monthly payments accordingly. Due to the delinquent status of your account, however, we will retain your surplus. Once during this period, your Required Escrow Account Balance should be reduced to $1,904.62 as shown in January. This amount represents the cushion selected by us as allowed by your loan contract, Federal and State law.

## NEW LOAN PAYMENT

| | | |
|---|---|---|
| Your new payment consists of: | Principal & Interest (P & I) | $2,148.63 |
| | Escrow Deposit | $952.31 |
| **New Loan Payment** | **Beginning on August 1, 2019** | **$3,100.94** |

**Important Notes:**

**Automatic Draft Customers:** If you're enrolled in Automatic Drafting, any additional principal deductions you have previously authorized are not included in the above listed new payment amount. However, until we are otherwise advised, the authorized additional principal amount will continue to be withdrawn from your account.

**Adjustable Rate Mortgage Customers:** If your loan has an adjustable interest rate your monthly principal and interest payment may change prior to your next Escrow Analysis.

**Insurance Renewal/Changing Insurance Companies:** Upload proof of insurance coverage at www.MyCoverageInfo.com using PIN: CEN300.

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS LOAN STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT INDEBTEDNESS AS YOUR PERSONAL OBLIGATION.

Should you have any questions about this Escrow Analysis, please call our Customer Service Department at 855-839-6253.

Loan No.

# FIXED RATE NOTE

*Certified to be a True and Correct Copy S/James DiMaggio, Esquire*

October 18, 2006          White Plains          NY
[Date]          [City]          [State]

66 MADISON AVENUE, JERSEY CITY, NJ  07304
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ **286,000.00** (this amount is called "principal"), plus interest, to the order of the Lender.  The Lender is    Argent Mortgage Company, LLC .

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of  **8.250 %**.

The interest rate required by this Section 2 is the rate I will pay before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**
   **(A)   Time and Place of Payments**
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on    **December 1, 2006.**
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on    **November 1, 2036,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at:  **505 City Parkway West, Suite 100,  Orange, CA 92868**

or at a different place if required by the Note Holder.

   **(B)   Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. **$2,148.63.**

**4.   BORROWER'S RIGHT TO PREPAY**
I may repay this Note at any time without a penalty.

**5.   LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then; (i) any such loan charged shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A)   Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of  **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder.
The amount of the charge will be **5.000 %** of my overdue payment of principal and interest.
I will pay this late charge promptly but only once on each late payment.

   **(B)   Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C)   Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed me.

Initials: *AB*

200-1UNIV (Rev 03/05)          10/18/2006 1:33:43 PM

**(D)   No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E)   Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7.   GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to Pay all of the amounts owed under this Note.

**9.   WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
    **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if prohibited by federal law as of the date of this Security Instrument.
    If the Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____(Seal)
Borrower:   AHMED A. BASUONI
SSN:

_____(Seal)
Borrower:   AL MOATOZ B. BASUONI    10-18-06
SSN:

PAY TO THE ORDER OF
WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC _____(Seal)
Borrower:
SSN:    BY:_____
SAM MARZOUK, PRESIDENT
BY:_____
GREG J. YB HANSON, C.F.O.

_____(Seal)
Borrower:
SSN:

Initials: _____

10/18/2006 1:33:43 PM

200-2UNIV (Rev 03/05)

Return To:

Argent Mortgage Company, LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt 19 North
Palm Harbor, FL 34683

Prepared By:Argent Mortgage Company, LLC

Jocelyn Cruz
333 Westchester Avenue, 1st
Floor,White Plains, NY 10604

Certified to be a True
and Correct Copy
S/James DiMaggio, Esquire

000035308
RECEIVED
HNO
RECORDED
HTG

02/06/2007 02:18P
WILLIE L. FLOOD
HUDSON COUNTY
REGISTER OF DEEDS
RECEIPT NO. 271223

——————————[Space Above This Line For Recording Data]——————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated October 18, 2006
together with all Riders to this document.
(B) "Borrower" is AL MOATOZ B. BASUONI and AHMED A. BASUONI, JOINT TENANTS IN
COMMON

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Limited Liability Company
organized and existing under the laws of Delaware

NEW JERSEY - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01



-6(NJ) (0005)
Page 1 of 15          Initials: AB  H.

VMP MORTGAGE FORMS - (800)521-7291

10/18/2006 1:33:43

D06-01NJ (05/2005)Rev.01

BK:15465  PG:00211

Lender's address is 3 Park Plaza - 10th Floor  Irvine, CA 92614

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated October 18, 2006
The Note states that Borrower owes Lender two hundred eighty-six thousand and 00/100

Dollars

(U.S. $286,000.00                ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2036          .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

(VMP) -6(NJ) (0605)          Page 2 of 15     Initials: _HJS_ _NY_          Form 3031 1/01
10/18/2006 1:33:43

D06-02NJ (05/2005)Rev.01

BK:15465   PG:00212

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of HUDSON :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]
EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF:

Property Account Number: 06                    which currently has the address of
66 MADISON AVENUE                                                        [Street]
JERSEY CITY                          [City], New Jersey 07304        [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this


-6(NJ) (0006)                            Page 3 of 15    Initials: AB YH
                                         10/18/2006 1:33:43   Form 3031 1/01

D06-03NJ (05/2005)Rev.01

# COMMONWEALTH LAND TITLE INSURANCE COMPANY OF NEW JERSEY

### TITLE INSURANCE COMMITMENT
### SCHEDULE B SECTION I

File Number:

### SCHEDULE C
### LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the **City of Jersey City, County of Hudson State of New Jersey**:

Beginning at a point on the southeasterly sideline of Madison Avenue (70 feet wide), said point being distant northeasterly 146.50 feet from the intersection of said sideline with the northeasterly sideline of Clinton Avenue (60 feet wide), and running; thence

1. Leaving Madison avenue, to, thru and beyond a party wall, South 55 degrees 32 minutes 00 seconds East a distance of 83.68 feet to a point; thence

2. North 29 degrees 40 minutes 00 seconds East a distance of 3.51 feet to a point; thence

3. South 55 degrees 32 minutes 00 seconds East a distance of 6.62 feet to a point; thence

4. North 34 degrees 28 minutes 00 seconds East a distance of 22.00 feet to a point; thence

5. To, thru and beyond a party wall, North 55 degrees 32 minutes 00 seconds West a distance of 90.00 feet to a point on the southeasterly sideline of said Madison Avenue; thence

6. Along said sideline, South 34 degrees 28 minutes 00 seconds West a distance of 25.50 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey made by Donald P. Sweeney, P.L.S. dated 03/28/2000.

NOTE: Being Lot(s) 10, Block 1939, Tax Map of the City of Jersey City, County of Hudson.

NOTE: Lot and Block shown for informational purposes only.

ALTA Commitment - Schedule A, B1 & B2                CMS Form No. NJ-C6

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

 -6(NJ) (0005)

Page 4 of 15

Initials: AD SD

10/18/2006 1:33:43

Form 3031 1/01

D06-04NJ (05/2005)Rev.01

BK:15465  PG:00215

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 -6(NJ) (9904).C2         Page 5 of 15    Initials: ___AB___    10/18/2006 1:33:43    Form 3031 3/99

D06-05NJ (05/2005)Rev.01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

D06-06NJ (05/2005)Rev.01

BK:15445   PG:00717

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

 -6(NJ) (0005)

Initials: _____        Page 7 of 15        10/18/2006 1:33:43        Form 3031 1/01

D06-07NJ (05/2005)Rev.01

BK:15465    PG:00218

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

 -6(NJ) (0005)    Page 8 of 15    Initials: _MD N31_    10/18/2006 1:33:43    Form 3031 1/01

D06-08NJ (05/2005)Rev 01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires payments to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

  -6(NJ) (0005)         Page 9 of 15    Initials: MD NB
10/18/2005 1:33:43      Form 3031 1/01

D06-09NJ (05/2005)Rev.01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

 -6(NJ) (0005)                         Page 10 of 15    initials: HD N ,    10/18/2006 1:33:43           Form 3031 1/01

D06-10NJ (05/2005)Rev.01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the

 -6(NJ) (0005)

Page 11 of 15     Initials: _HS XL_     10/18/2006 1:33:43     Form 3031 1/01

D06-11NJ (05/2005)Rev.01

new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(NJ) (0005)

Initials: HD [?]

Page 12 of 15    10/18/2006 1:33:43    Form 3031 1/01

D06-12NJ (05/2005)Rev.01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at Sections 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Claim of Credit for Taxes. Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

 -6(NJ) (0005)

Page 13 of 15    Initials: ___    10/18/2006 1:33:43    Form 3031 1/01

D06-13NJ (05/2005)Rev.01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____      _____ (Seal)
                                       AHMED A. BASUONI              -Borrower

_____      _____ (Seal)
                                       AL MOATOZ B. BASUONI          -Borrower

_____ (Seal)        _____ (Seal)
            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
            -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
            -Borrower                              -Borrower

-6(NJ) (0005)          Page 14 of 15  10/18/2006  1:33:43 PM   Form 3031 1/01

D06-14NJ (05/2005)Rev.01

BK=15465   PG=00225

STATE OF NEW JERSEY, _York Richmon_ County ss:

On this ___18th___ day of ___October  2006___, before me, the
             Day                    Month/Year

subscriber, personally appeared

AHMED A. BASUONI  AND
AL MOATOZ B. BASUONI

who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and
thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their
act and deed, for the purposes therein expressed.

MARIE BONACORSI                        _Marie Bonacorsi_
Notary Public, State of New York       Notary Public
No. 01BO4807701
Qualified in Richmond County
Commission Expires December 31, 2006

Page 15 of 15

AB
10/18/2006 1:33:43 PM

400-15NJ (05/2005)Rev.01

BK:15465   PG:00226

## 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 18th      day of October, 2006                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to Argent Mortgage Company, LLC

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:
66 MADISON AVENUE, JERSEY CITY, NJ  07304

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to
the Property described in the Security Instrument, the following items now or hereafter attached to the
Property to the extent they are fixtures are added to the Property description, and shall also constitute the
Property covered by the Security Instrument: building materials, appliances and goods of every nature
whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating,
cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and
access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens,
blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in
the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to
in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Initials: _AB_ _YX_
Page 1 of 4                                           Form 3170 1/01
-57R (0008)               VMP MORTGAGE FORMS - (800)521-7291    10/18/2006 1:33:43 PM

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii)

10/18/2006 1:33:43 PM

Initials: _AB DW_

BK=15465    PG=00228

Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

10/18/2006 1:33:43 PM

Initials: _A̶B̶_ _J̶H̶_

-57R (0008)                    Page 3 of 4                    Form 3170 1/01

BK:15465    PG:00229

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
AHMED A. BASUONI            -Borrower

_____ (Seal)
AL MOATOZ B. BASUONI        -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

-57R (0008)          Page 4 of 4          Form 3170 1/01   AB
                                          10/18/2006 1:33:43 PM

BK=15465   PG=00230

Hudson County Register 20090302020006950 Bk:1169 Pg:259 1/1

CRL L█████████
CMI L█████████
Investor █████████
Custod█████████
Effective Date: 02/11/2009

██████2009 12:25:14 PM   ASSIGNMENT
Bk: 1169 Pg: 259
Willie L Flood
Hudson County, Register of Deeds
Receipt No. 77096

Certified to be a True
and Correct Copy
S/James DiMaggio, Esquire

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC, WHOSE ADDRESS IS 10801 E. 6TH STREET , RANCHO CUCAMONGA, CA 91730, (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described mortgage together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ('MERS') A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, AS NOMINEE FOR CITIMORTGAGE INC. PO BOX 2026, FLINT, MI 48501, (ASSIGNEE)**.
Said mortgage dated 10/18/2006, made by: AHMED A BASUONI AND AL MOATOZ B BASUONI to ARGENT MORTGAGE COMPANY, LLC recorded in mortgage book 15465 page 211 Instr# in the office of the Register of Titles/County Recorder in and for HUDSON, New Jersey.
Mortgage Premises: 66 MADISON AVE
JERSEY CITY, NJ 07304

Dated:01/27/2009
CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC

_____
**CRYSTAL MOORE VICE PRESIDENT**

STATE OF FLORIDA
COUNTY OF PINELLAS
BE IT REMEMBERED, That on THIS 27TH DAY OF JANUARY IN THE YEAR 2009 before me, the subscriber, a Notary Public of the State of FLORIDA personally appeared CRYSTAL MOORE the VICE PRESIDENT of CITI RESIDENTIAL LENDING INC., AS ATTORNEY-IN-FACT FOR ARGENT MORTGAGE COMPANY, LLC who, I am satisfied, is the person who has signed the within instrument; and having first made known to s/he the contents thereof, s/he thereupon acknowledged that s/he signed and delivered the said instrument as such officer aforesaid; that the within instrument is the voluntary act and deed of said corporation, made by virtue of authority from its Board of Directors.

_____
BRYAN J. BLY Notary Public

Bryan J. Bly
Notary Public, State of Florida
Commission # DD 691055
Expires July 01, 2011
Bonded Through National Notary Assn.

Prepared by: Jessica Fretwell/NTC,2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
When Recorded Return To:
CITI RESIDENTIAL LENDING INC.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

FILED
██████2009   12:█████ PM
ASSIGNMENT
NUMBER OF PAGES : 1
JPISCOPO

## Register 20110315020007380 Bk:1184 Pg:626 1/2

Certified to be a True
and Correct Copy
S/James DiMaggio, Esquire

**WHEN RECORDED MAIL TO:**
PHELAN HALLINAN & SCHMIEG
400 Fellowship Road
Suite 100
Mt. Laurel, NJ 08054

03/15/2011 03:40:15 PM  ASSIGNMENT
Bk: 1184 Pg: 626
Willie L.Flood
Hudson County, Register of Deeds
Receipt No. 530904

## <u>ASSIGNMENT OF MORTGAGE</u>

*FOR VALUE RECEIVED*, the undersigned, as beneficiary or successor thereto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for CITIMORTGAGE, INC., its successors and assigns, a Delaware corporation, whose address is c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240, hereby grants, conveys, assigns and transfers unto CitiMortgage Inc., whose address is 1000 Technology Drive, O'Fallon, MO 63368-2240, it's successors and assigns, all beneficial interest under that certain Mortgage dated OCTOBER 18, 2006.  Said Mortgage is recorded in the State of New Jersey, County of HUDSON

*Mortgage Recorded: 2/6/07*
*Original Mortgage Company: ARGENT MORTGAGE COMPANY, LLC*
*Original Mortgagors: AL MOATOZ B BASUONI AND AHMED A BASUONI*
*Original Loan Amount: $ 286,000.00*
*Book: 15465*
*Page: 211*
*Property Address: 66 MADISON AVE, JERSEY CITY, NJ 07304*

*TO HAVE AND TO HOLD* the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation.  And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

*I AGREE TO THE TERMS OF THIS ASSIGNMENT.*

# Register 20110315020007380 2/2

*Witnessed or Attested by:*

_____
Witness

~~Kim Krakoviak~~ _____(Seal)
Kim Krakoviak, Assistant Secretary

## NOTARY ACKNOWLEDGMENT

**CAPACITY CLAIMED BY SIGNER:**  *Assistant Secretary*

*OF* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for
CITIMORTGAGE, INC. ITS SUCCESSORS AND ASSIGNS

**STATE OF MISSOURI**
**COUNTY OF ST CHARLES**

On, this ___1/6/2011___, before me, ___Alex D Crossman___, a Notary Public,
personally appeared Kim Krakoviak, who proved to me on the basis of satisfactory evidence to
be the person whose name is subscribed to the within instrument and acknowledged that he/she
executed the same in her authorized capacity and that by her signature on the instrument, the
entity upon behalf of which the person acted executed the instrument.

*WITNESS my hand and official seal.*

_____
Notary Public

```
ALEX D CROSSMAN
Notary Public - Notary Seal
State of Missouri
St. Charles County
Commission #08672776
My Commission Exp. 11/21/2012
```

```
03/15/2011   03:40:15 PM
ASSIGNMENT
NUMBER OF PAGES : 2
LHAMPTON
```

Hudson County Register 20110420020010840 Bk:1185 Pg:325 1/2

Certified to be a True
and Correct Copy
S/James DiMaggio, Esquire

04/20/2011 12:09:14 PM  ASSIGNMENT
Bk: 1185 Pg: 325
Willie L.Flood
Hudson County, Register of Deeds
Receipt No. 564721

Record & Return To and Prepared By:
CT Lien Solutions
100 Wood Hollow Drive, Suite 170
Novato, CA 94945
888-861-8818
Prepared by: Teri Augustine
Loan #:
Deal Name: Internal
NJ, Hudson

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **Mortgage Electronic Registration Systems, Inc.** herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **CitiMortgage, Inc.**, herein ("Assignee") that certain MORTGAGE referenced below;

**Borrower: AL MOATOZ B. BASUONI AND AHMEND A. BASUONI. JOINT TENANTS IN COMMON**
**Recorded: 02/06/2007  Book: 15465  Page: 00211  in Hudson, NJ.  Loan Amount: $286,000.00**

Property:      **66 MADISON AVE, JERSEY CITY, NJ 07304**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective 04/04/2011.

Mortgage Electronic Registration Systems, Inc.

By: _____
Name:   Dawn Midyett
Title:    Assistant Secretary

State of Missouri
County of St Charles

On this 4/4/2011 before me, Chad Dumay, a Notary Public in and for said state, personally appeared Dawn Midyett, Assistant Secretary of Mortgage Electronic Registration Systems, Inc., known to me to be the person who executed the within instrument in behalf of said entity and acknowledged to me that he/she executed the same for the purposes therein stated.

_____
Notary Public: Chad Dumay
My commission expires: 11/21/2014

CHAD DUMAY
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Charles County
My Commission Expires: November 21, 2014
Commission Number: 10115220

Hudson County Register 20110420020010840 2/2

## LEGAL DESCRIPTION

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Jersey City, County of Hudson State of New Jersey:

Beginning at a point on the southeasterly sideline of Madison Avenue (70 feet wide), said point being distant northeasterly 146.50 feet from the intersection of said sideline with the northeasterly sideline of Clinton Avenue (60 feet wide), and running; thence

1. Leaving Madison avenue, to, thru and beyond a party wall, South 55 degrees 32 minutes 00 seconds East a distance of 83.68 feet to a point; thence

2. North 29 degrees 40 minutes 00 seconds East a distance of 3.51 feet to a point; thence

3. South 55 degrees 32 minutes 08 seconds East a distance of 6.62 feet to a point; thence

4. North 34 degrees 28 minutes 00 seconds East a distance of 22.00 feet to a point; thence

5. To, thru and beyond a party wall, North 55 degrees 32 minutes 00 seconds West a distance of 90.00 feet to a point on the southeasterly sideline of said Madison Avenue; thence

6. Along said sideline, South 34 degrees 28 minutes 00 seconds West a distance of 25.50 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey made by Donald P. Sweeney, P.L.S. dated 03/28/2000.

NOTE: Being Lot(s) 10, Block 1939, Tax Map of the City of Jersey City, County of Hudson.

NOTE: Lot and Block shown for informational purposes only.

04/20/2011      :14 PM
ASSIGNMENT
NUMBER OF PAGES : 2
JP1SCOPO

Certified to be a True
and Correct Copy
S/James DiMaggio, Esquire

Return To:
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071

03/20/2014 11:58:04 AM  ASSIGNMENT
Bk: 1207 Pg: 957
Pamela E. Gardner
Hudson County, Register of Deeds
Receipt No: 850115

This instrument prepared by:
CITIMORTGAGE, INC
JOY OLIVEROS
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO
63368-2240

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, CitiMortgage, Inc. , the undersigned, as beneficiary or successor thereto, whose address is 1000 Technology Drive, O'Fallon, MO, 63368 , hereinafter "Assignor" , hereby grants, conveys, assigns and transfers unto CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S. BANK NATIONALASSOCIATION, AS TRUSTEE , hereinafter, "Assignee" , whose address is 1000 Technology Drive, O'Fallon, MO, 63368 , all beneficial interest under that certain Mortgage dated 10/18/2006 . Said Mortgage is recorded in the State of New Jersey, County of Hudson County .

Mortgage Recorded: 02/06/2007
Original Mortgagors: Al Moataz B. Basuoni and Ahmed A. Basuoni
Original Loan Amount: $286,000.00
Recorded as: Book: 15465 Page: 00211 Instrument No: N/A
Property Address: 66 Madison Ave, Jersey City, NJ, 07304
Description/Additional Information: See Exhibit A

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignee. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

TO HAVE AND TO HOLD the same unto the said Assignee, its successor and assigns, forever subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation, as defined in the Mortgage. And the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost and expense to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these presents were not made.

I AGREE TO THE TERMS OF THIS ASSIGNMENT.

Date: 3.6.14
CitiMortgage, Inc.
(the Assignor)
By:
Name: Joy L. Oliveros
Title: Document Control Officer

Hudson County Register 20140320020009720 2/3

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On _____ 3-6-14 _____ before me, the undersigned, a notary public in and for said state, personally appeared **Joy L Oliveros**, **Document Control Officer** of **CitiMortgage, Inc.** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

> TONJA BROOKS
> Notary Public - Notary Seal
> State of Missouri
> Commissioned for St. Louis County
> My Commission Expires: July 25, 2016
> Commission Number: 12372473

Notary Public **Tonja Brooks**

Commission Expires: 07/25/2016

Hudson County Register 20140320020009720 3/3

## Exhibit A

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City of Jersey City, County of Hudson State of New Jersey:

Beginning at a point on the southeasterly sideline of Madison Avenue (70 feet wide), said point being distant northeasterly 146.50 feet from the intersection of said sideline with the northeasterly sideline of Clinton Avenue (60 feet wide), and running; thence

1. Leaving Madison avenue, to, thru and beyond a party wall, South 55 degrees 32 minutes 00 seconds East a distance of 83.68 feet to a point; thence

2. North 29 degrees 40 minutes 00 seconds East a distance of 3.51 feet to a point; thence

3. South 55 degrees 32 minutes 00 seconds East a distance of 6.62 feet to a point; thence

4. North 34 degrees 28 minutes 00 seconds East a distance of 22.00 feet to a point; thence

5. To, thru and beyond a party wall, North 55 degrees 32 minutes 00 seconds West a distance of 90.00 feet to a point on the southeasterly sideline of said Madison Avenue; thence

6. Along said sideline, South 34 degrees 28 minutes 00 seconds West a distance of 25.50 feet to the point and place of Beginning.

The above description is drawn in accordance with a survey made by Donald P. Sweeney, P.L.S. dated 03/28/2000.

NOTE: Being Lot(s) 10, Block 1939, Tax Map of the City of Jersey City, County of Hudson.

NOTE: Lot and Block shown for informational purposes only.

FILED

ASSIGNMENT
NUMBER OF PAGES : 3
JPISCOPO

# Exhibit "B"

STATISTICAL INFORMATION ONLY: Debtor must select the number of each of the following items included in the Plan.

| **0** | Valuation of Security | Assumption of Executory Contract or Unexpired Lease | **1** | Lien Avoidance |

**Last revised: September 1, 2018**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

In Re:    **Almoataz Basuoni**

Case No.:    **19-24262-JKS**

Judge:    _____

Debtor(s)

### Chapter 13 Plan and Motions

☑ Original                    ☐ Modified/Notice Required              Date:    **09/17/2019**

☑ Motions Included            ☐ Modified/No Notice Required

THE DEBTOR HAS FILED FOR RELIEF UNDER
CHAPTER 13 OF THE BANKRUPTCY CODE

**YOUR RIGHTS MAY BE AFFECTED**

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. Anyone who wishes to oppose any provision of this Plan or any motion included in it must file a written objection within the time frame stated in the Notice. Your rights may be affected by this plan. Your claim may be reduced, modified, or eliminated. This Plan may be confirmed and become binding, and included motions may be granted without further notice or hearing, unless written objection is filed before the deadline stated in the Notice. The Court may confirm this plan, if there are no timely filed objections, without further notice. See Bankruptcy Rule 3015. If this plan includes motions to avoid or modify a lien, the lien avoidance or modification may take place solely within the chapter 13 confirmation process. The plan confirmation order alone will avoid or modify the lien. The debtor need not file a separate motion or adversary proceeding to avoid or modify a lien based on value of the collateral or to reduce the interest rate. An affected lien creditor who wishes to contest said treatment must file a timely objection and appear at the confirmation hearing to prosecute same.

---

The following matters may be of particular importance. Debtors must check one box on each line to state whether the plan includes each of the following items. If an item is checked as "Does Not" or if both boxes are checked, the provision will be ineffective if set out later in the plan.

---

THIS PLAN:

☐ DOES  ☑ DOES NOT CONTAIN NON-STANDARD PROVISIONS. NON-STANDARD PROVISIONS MUST ALSO BE SET FORTH IN PART 10.

☐ DOES  ☑ DOES NOT LIMIT THE AMOUNT OF A SECURED CLAIM BASED SOLELY ON VALUE OF COLLATERAL, WHICH MAY RESULT IN A PARTIAL PAYMENT OR NO PAYMENT AT ALL TO THE SECURED CREDITOR. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

☑ DOES  ☐ DOES NOT AVOID A JUDICIAL LIEN OR NONPOSSESSORY, NONPURCHASE-MONEY SECURITY INTEREST. SEE MOTIONS SET FORTH IN PART 7, IF ANY.

Initial Debtor(s)' Attorney: _____    Initial Debtor: _____    Initial Co-Debtor: _____

**Chapter 13 Plan**

Case No:   19-24262-JKS
Debtor(s):   **Almoataz Basuoni**

---

### Part 1:   Payment and Length of Plan

a.   The debtor shall pay   __Variable*__   per   __month__   to the Chapter 13 Trustee, starting on _____
for approximately   ___60___   months.

b.   The debtor shall make plan payments to the Trustee from the following sources:

☑   Future earnings

☐   Other sources of funding (describe source, amount and date when funds are available):

c.   Use of real property to satisfy plan obligations:

☐   Sale of real property:
Description:


Proposed date for completion: _____

☐   Refinance of real property:
Description:


Proposed date for completion: _____

☐   Loan modification with respect to mortgage encumbering property:
Description:


Proposed date for completion: _____

d.   ☑   The regular monthly mortgage payment will continue pending the sale, refinance or loan modification.

e.   ☐   Other information that may be important relating to the payment and length of the plan:

---

### Part 2:   Adequate Protection   ☑ NONE

a.   Adequate protection payments will be made in the amount of _____ to be paid to the Chapter 13 Trustee and
disbursed pre-confirmation to _____ (creditor).

b.   Adequate protection payments will be made in the amount of _____ to be paid directly by the debtor(s) outside
the Plan, pre-confirmation to: _____ (creditor).

**Chapter 13 Plan**

Case No:    19-24262-JKS
Debtor(s):    **Almoataz Basuoni**

---

| Part 3: | Priority Claims (Including Administrative Expenses) |
|---|---|

a.   All allowed priority claims will be paid in full unless the creditor agrees otherwise:

| Creditor | Type of Priority | Amount to be Paid |
|---|---|---|
| **CHAPTER 13 STANDING TRUSTEE** | **ADMINISTRATIVE** | **AS ALLOWED BY STATUTE** |
| **ATTORNEY FEE BALANCE** | **ADMINISTRATIVE** | **BALANCE DUE: $3,000.00** |

b.   Domestic Support Obligations assigned or owed to a governmental unit and paid less than full amount:
Check one:

☑ None

☐ The allowed priority claims listed below are based on a domestic support obligation that has been assigned to or is owed to a governmental unit and will be paid less than the full amount of the claim pursuant to 11 U.S.C. 1322(a)(4):

| Creditor | Type of Priority | Claim Amount | Amount to be Paid |
|---|---|---|---|
| | | | |

---

| Part 4: | Secured Claims |
|---|---|

a.   **Curing Default and Maintaining Payments on Principal Residence:**   ☑ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor shall pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor / Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|
| | | | | |

b.   **Curing and Maintaining Payments on Non-Principal Residence and other loans or rent arrears:**   ☑ **NONE**

The Debtor will pay to the Trustee (as part of the Plan) allowed claims for arrearages on monthly obligations and the debtor will pay directly to the creditor (outside the Plan) monthly obligations due after the bankruptcy filing as follows:

| Creditor / Collateral or Type of Debt | Arrearage | Interest Rate on Arrearage | Amount to be Paid to Creditor (In Plan) | Regular Monthly Payment (Outside Plan) |
|---|---|---|---|---|
| | | | | |

c.   **Secured claims excluded from 11 U.S.C. 506:**   ☑ **NONE**

The following claims were either incurred within 910 days before the petition date and are secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or incurred within one year of the petition date and secured by a purchase money security interest in any other thing of value:

| Name of Creditor / Collateral | Interest Rate | Amount of Claim | Total to be Paid through the Plan Including Interest Calculation |
|---|---|---|---|
| | | | |

**Chapter 13 Plan**

Case No:    19-24262-JKS
Debtor(s):    **Almoataz Basuoni**

---

d.    **Requests for valuation of security, Cram-down, Strip Off and Interest Rate Adjustments**    ☑ NONE

1.) The debtor values collateral as indicated below. If the claim may be modified under Section 1322(b)(2), the secured creditor shall be paid the amount listed as the "Value of the Creditor Interest in Collateral," plus interest as stated. The portion of any allowed claim that exceeds that value shall be treated as an unsecured claim. If a secured claim is identified as having "NO VALUE" it shall be treated as an unsecured claim.

**NOTE: A modification under this Section ALSO REQUIRES**
**the appropriate motion to be filed under Section 7 of the Plan.**

| Creditor / Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor Interest in Collateral | Annual Interest Rate | Total Amount to be Paid |
|---|---|---|---|---|---|---|
| | | | | | | |

2.) Where the Debtor retains collateral and completes the Plan, payment of the full amount of the allowed secured claim shall discharge the corresponding lien.

e.    **Surrender**    ☑ NONE

Upon confirmation, the stay is terminated as to surrendered collateral only under 11 U.S.C. 362(a) and that the stay under 11 U.S.C. 1301 be terminated in all respects. The Debtor surrenders the following collateral:

| Creditor | Collateral to be Surrendered | Value of Surrendered Collateral | Remaining Unsecured Debt |
|---|---|---|---|
| | | | |

f.    **Secured Claims Unaffected by the Plan**    ☐ NONE

The following secured claims are unaffected by the Plan:
**SPS**

g.    **Secured Claims to be Paid in Full Through the Plan:**    ☑ NONE

| Creditor | Collateral | Total Amount to be Paid Through the Plan |
|---|---|---|
| | | |

### Part 5:    Unsecured Claims    ☐ NONE

a.    **Not separately classified** allowed non-priority unsecured claims shall be paid:

☐ Not less than _____ to be distributed pro rata

☐ Not less than _____ percent

☑ Pro Rata distribution from any remaining funds

b.    **Separately classified unsecured** claims shall be treated as follows:

| Creditor | Basis for Separate Classification | Treatment | Amount to be Paid |
|---|---|---|---|
| | | | |

4

**Chapter 13 Plan**

Case No:    19-24262-JKS
Debtor(s):  **Almoataz Basuoni**

---

| Part 6: | Executory Contracts and Unexpired Leases | ☑ NONE |
|---------|------------------------------------------|--------|

(NOTE:  See time limitations set forth in 11 U.S.C. 365(d)(4) that may prevent assumption of non-residential real property leases in this Plan.)

All executory contracts and unexpired leases, not previously rejected by operation of law, are rejected, except the following, which are assumed:

| Creditor | Arrears to be Cured in Plan | Nature of Contract or Lease | Treatment by Debtor | Post-Petition Payment |
|----------|------------------------------|------------------------------|----------------------|------------------------|
|          |                              |                              |                      |                        |

| Part 7: | Motions | ☐ NONE |
|---------|---------|--------|

NOTE: All plans containing motions must be served on all potentially affected creditors, together with local form, *Notice of Chapter 13 Plan Transmittal,* within the time and in the manner set forth in D.N.J. LBR 3015-1.  A *Certification of Service, Notice of Chapter 13 Plan Transmittal and valuation* must be filed with the Clerk of Court when the plan and transmittal notice are served.

a.   **Motion to Avoid Liens Under 11. U.S.C. Section 522(f).**    ☐ NONE

The Debtor moves to avoid the following liens that impair exemptions:

| Creditor / Nature of Collateral / Type of Lien | Amount of Lien | Value of Collateral | Amount of Claimed Exemption | Sum of All Other Liens Against the Property | Amount of Lien to be Avoided |
|-------------------------------------------------|----------------|----------------------|------------------------------|-----------------------------------------------|-------------------------------|
| Cenlar<br>66 Madison Avenue, Jersey City, NJ 07304<br>**Purchase Money** | i345,000.00 | i425,000.00 | $0.00 | $0.00 | $0.00 |

b.   **Motion to Avoid Liens and Reclassify Claim From Secured to Completely Unsecured.**  ☑ NONE

The Debtor moves to reclassify the following claims as unsecured and to void liens on collateral consistent with Part 4 above:

| Creditor / Collateral | Scheduled Debt | Total Collateral Value | Superior Liens | Value of Creditor's Interest in Collateral | Total Amount of Lien to be Reclassified |
|------------------------|----------------|-------------------------|-----------------|---------------------------------------------|------------------------------------------|
|                        |                |                         |                 |                                             |                                          |

c.   **Motion to Partially Void Liens and Reclassify Underlying Claims as Partially Secured and Partially Unsecured.**
     ☑ NONE

The Debtor moves to reclassify the following claims as partially secured and partially unsecured, and to void liens on collateral consistent with Part 4 above:

| Creditor / Collateral | Scheduled Debt | Total Collateral Value | Amount to be Deemed Secured | Amount to be Reclassified as Unsecured |
|------------------------|----------------|-------------------------|------------------------------|-----------------------------------------|
|                        |                |                         |                              |                                         |

**Chapter 13 Plan**                    Case No:   19-24262-JKS
                                       Debtor(s):   **Almoataz Basuoni**

---

| Part 8:   Other Plan Provisions |
|---|

a.  **Vesting of Property of the Estate**

☐  Upon confirmation

☑  Upon discharge

b.  **Payment Notices**

Creditors and Lessors provided for in Parts 4, 6 or 7 may continue to mail customary notices or coupons to the Debtor notwithstanding the automatic stay.

c.  **Order of Distribution**

The Standing Trustee shall pay allowed claims in the following order:

1) **Ch. 13 Standing Trustee commissions**
2) _____
3) _____
4) _____

d.  **Post-Petition Claims**

The Standing Trustee ☐ is, ☑ is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a) in the amount filed by the post-petition claimant.

| Part 9:   Modification   ☑ NONE |
|---|

If this Plan modifies a Plan previously filed in this case, complete the information below.

Date of Plan being Modified:   _____

| Explain below WHY the plan is being modified: | Explain below HOW the plan is being modified: |
|---|---|
|  |  |

Are Schedules I and J being filed simultaneously with this Modified Plan?     ☐ Yes     ☐ No

| Part 10:   Non-Standard Provision(s): Signatures Required |
|---|

Non-Standard Provisions Requiring Separate Signatures:

☑  NONE

☐  Explain here:

Any non-standard provisions placed elsewhere in this plan are ineffective.

**Chapter 13 Plan**

Case No:    19-24262-JKS
Debtor(s):  **Almoataz Basuoni**

---

## Signatures

The Debtor(s) and the attorney for the Debtor(s), if any, must sign this Plan.

By signing and filing this document, the debtor(s), if not represented by an attorney, or the attorney for the debtor(s) certify that that the wording and order of the provisions in this Chapter 13 Plan are identical to Local Form, Chapter 13 Plan and Motions, other than any non-standard provisions included in Part 10.

I certify under penalty of perjury that the above is true.

Date: ___9/17/19___          _____
                              Almoataz Basuoni, Debtor

Date: _____        _____
                              Joint Debtor

Date: ___9/17/19___          _____
                              Mario M. Blanch, Esq., Attorney for the Debtor

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

IN RE:  **Almoataz Basuoni**                                    CASE NO   **19-24262-JKS**

*Debtor(s)*                                                        CHAPTER   **13**

## EXHIBIT "B" - VARIABLE PLAN PAYMENTS

### PROPOSED PLAN OF REPAYMENT (VARIABLE PAYMENTS INTO THE PLAN)

| Month | Payment | Month | Payment | Month | Payment |
|-------|---------|-------|---------|-------|---------|
| 1 | $100.00 | 21 | $100.00 | 41 | $100.00 |
| 2 | $100.00 | 22 | $100.00 | 42 | $100.00 |
| 3 | $100.00 | 23 | $100.00 | 43 | $100.00 |
| 4 | $100.00 | 24 | $100.00 | 44 | $100.00 |
| 5 | $100.00 | 25 | $100.00 | 45 | $100.00 |
| 6 | $100.00 | 26 | $100.00 | 46 | $100.00 |
| 7 | $100.00 | 27 | $100.00 | 47 | $100.00 |
| 8 | $100.00 | 28 | $100.00 | 48 | $100.00 |
| 9 | $100.00 | 29 | $100.00 | 49 | $100.00 |
| 10 | $100.00 | 30 | $100.00 | 50 | $100.00 |
| 11 | $100.00 | 31 | $100.00 | 51 | $100.00 |
| 12 | $100.00 | 32 | $100.00 | 52 | $100.00 |
| 13 | $100.00 | 33 | $100.00 | 53 | $100.00 |
| 14 | $100.00 | 34 | $100.00 | 54 | $100.00 |
| 15 | $100.00 | 35 | $100.00 | 55 | $100.00 |
| 16 | $100.00 | 36 | $100.00 | 56 | $100.00 |
| 17 | $100.00 | 37 | $100.00 | 57 | $100.00 |
| 18 | $100.00 | 38 | $100.00 | 58 | $100.00 |
| 19 | $100.00 | 39 | $100.00 | 59 | $100.00 |
| 20 | $100.00 | 40 | $100.00 | 60 | $381,000.00 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

830224
Phelan Hallinan Diamond & Jones, PC
1617 JFK Boulevard, Suite 1400
Philadelphia, PA 19103
856-813-5500
Attorneys for CITIGROUP MORTGAGE LOAN
TRUST INC. ASSET-BACKED PASS-THROUGH
CERTIFICATES, SERIES 2007-AMC2, U.S. BANK
NATIONAL ASSOCIATION, AS TRUSTEE

| | |
|---|---|
| In Re:<br><br>ALMOATAZ B. BASUONI, JR | Case No:  19-24262 - JKS<br><br>Hearing Date: 10/24/2019<br><br>Judge:  JOHN K. SHERWOOD<br><br>Chapter:  13 |

## CERTIFICATION OF SERVICE

1.    I, Chris Villegas:

☐ represent the _____ in the above-captioned matter.

☒ am the secretary/paralegal for Phelan Hallinan Diamond & Jones, PC,
who represents CITIGROUP MORTGAGE LOAN TRUST INC. ASSET-
BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-AMC2, U.S.
BANK NATIONAL ASSOCIATION, AS TRUSTEE in the above captioned
matter.

☐ am the _____ in the above case and am representing
myself.

2.    On October 4, 2019 I sent a copy of the following pleadings and/or
documents to the parties listed below:

**Objection to Plan**

3.    I hereby certify under penalty of perjury that the above documents were sent
using the mode of service indicated.


Dated:  _October 4, 2019_____        /s/  _Chris Villegas_____
                                                                        Chris Villegas

| Name and Address of Party Served | Relationship of Party to the Case | Mode of Service |
|---|---|---|
| Almoataz B. Basuoni, Jr<br>66 Madison Avenue, Jersey City, NJ 07304 | Debtor | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☐ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Mario M. Blanch, Esquire<br>440-65th Street<br>West New York, NJ 07093 | Debtor's Attorney | ☐ Hand-delivered<br>☒ Regular mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| Marie-ann Greenberg, Trustee<br>30 Two Bridges Road<br>Suite 330<br>Fairfield, NJ 07004 | Trustee | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |
| U.S. Trustee<br>US Dept of Justice<br>Office of the US Trustee<br>One Newark Center Ste 2100<br>Newark, NJ 07102 | U.S. Trustee | ☐ Hand-delivered<br>☐ Regular Mail<br>☐ Certified mail/RR<br>☐ E-mail<br>☒ Notice of Electronic Filing (NEF)<br>☐ Other_____<br>(as authorized by the court *) |

* May account for service by fax or other means as authorized by the court through the issuance of an Order Shortening Time.